## Lorenzo V. Davis v. William Gerber.[1]

*Statute of frauds—Contract for purchase and sale of land—Plead-ing—Common counts—Evidence—Practice in circuit courts —Charge to jury—Credibility of witnesses.*

1. A *verbal* agreement by which a party turns over to a land dealer a *verbal* option he has secured for the purchase of certain lands at a fixed price, with estimates of the timber thereon, and agrees to secure a *written* refusal in the name of the land dealer, who is to furnish the purchase money and take the deed in his own name, and on the sale of the land divide the profits with said party, is not within the statute of frauds, and, if carried out, said party can recover his share of the profits under a common-count declaration, amplified by a bill of particulars stating said facts. *Carr v. Leavitt*, 54 Mich. 540 ; *Pierson v. Spaulding*, 61 Id. 90; *Nugent v. Teachout*, 67 Id. 571.

2. Where the *liability* of a defendant depends upon his having sold land, the title to which was vested in him under an agreement to divide the profits arising from said sale with the plaintiff, the deed from the defendant is the best evidence of such liability, and must be produced. *Thompson v. Richards*, 14 Mich. 172.

3. It is not error for the court to allow plaintiff's counsel to read authorities, even after he has made his opening argument to the jury, and, while discretionary to allow an argument at that time by defendant's counsel, such a course is proper if desired.

4. The court may always tell the jury for what purpose certain testimony was received, but it is not proper to instruct them what that testimony tends to prove, without in the same connection submitting to them the question of its credibility, of which they are the sole judges.

Error to Newaygo. (Fuller, J.) Argued February 9, 1888. Decided April 6, 1888,

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

---

[1] A second trial resulted in a' like verdict for the plaintiff, which was paid.

*Ed. E. Edwards* (*L. A. Miller*, of counsel), for appellant.

*William D. Fuller*, for plaintiff.

SHERWOOD, C. J. Davis sued Gerber in *assumpsit*, and declared upon the common counts. The following is his claim in writing, as filed under his declaration:

"August 7, 1886. To one-half of the purchase price received by the defendant on the sale of the following described land in Grand Traverse county, Michigan, to R. Andrew Fleming, of Muskegon, namely [being about 1,200 acres], for the sum of $5,950, less the sum of $2,500 paid A. E. Carse for said lands, viz.:

Amount received_____$5,950.00
Amount paid_____ 2,500.00

$3,450.00

"One-half of same is the sum of $1,725, being the amount agreed to be paid to plaintiff by said defendant for looking up said lands and examining the same, and estimating the timber thereon, and securing the refusal of same from the owner, as per agreement between the plaintiff and defendant. Plaintiff admits the receipt from defendant of $247.33 to apply on said indebtedness.

"August 7, 1886. To one-half the profits realized
and received by defendant on the sale of the lands
above described, which belonged to plaintiff,
amounting to_____ $1,725.00
From which should be deducted_____ 247.33

$1,477.67"

The plea was the general issue.

It is the claim of the plaintiff that in the spring of 1885 he had an arrangement with Gerber for getting cedar poles, by which he was to share in the profits; that he found the land in question, and made an arrangement for its purchase for Gerber, by which he was to share in the profits of that also. No poles were ever furnished upon the contracts Davis made.

In regard to the land, Davis claims that prior to July 8, 1886, he had examined the land, which belonged to Carse, a land dealer residing at Big Rapids, and obtained a promise from him that he would sell it to him for a certain price;

that about this time he informed Gerber of the facts, who agreed to furnish the money to make the purchase of the land; that he (Davis)—

"Agreed to secure a written refusal from Carse in Gerber's name, and to show the land to any purchaser Gerber might send to him, and when a sale was made Davis was to receive one-half of the profits for his services."

That Davis fulfilled his agreement, and Mr. Gerber sold the property, and that he (Davis) is entitled to the amount stated in the declaration as his share of the net proceeds of the venture. Such is the claim of the plaintiff.

The defendant's statement of the case is quite different. He says,—

"They entered into an arrangement by which the plaintiff was to look up and purchase telegraph poles for shipment and sale, and the defendant was to furnish the money to pay his traveling expenses, and buy the poles, and when they were sold the net profits were to be shared equally between them, but the arrangement extended to nothing but poles; that defendant furnished the necessary money, according to agreement, and plaintiff traveled around for about a year, ostensibly for the purpose of finding and buying poles, and sent to defendant numerous written contracts purporting to be executed by various parties for the furnishing of poles, but none of said contracts were ever fulfilled, and no poles whatever were furnished; that it transpired that while plaintiff was thus traveling on defendant's money, making bogus contracts for poles, he was deceiving defendant as to what he was doing, and was transacting other business on his own account, and in the course of a transaction of this kind, about the last of March, 1886, with Alexander E. Carse, of Big Rapids, said Carse informed him of this tract of land which he owned and was anxious to sell, and employed plaintiff as his agent to procure a purchaser therefor.

"That in pursuance of this arrangement plaintiff sought out defendant, informed him that he had a 60-day option, or 'refusal,' for the purchase of said land, and repeatedly urged defendant to purchase it and give him a share in it, but defendant as often refused to have anything to do with it on a basis of giving plaintiff any interest whatever in it, and

plaintiff thereupon made unsuccessful efforts to induce numerous other parties to purchase the land.

" That after the expiration of the time of plaintiff's pretended option, on the eighth of June, 1886, as he was starting out on one of his pole excursions, in which he was to pass through the city of Big Rapids, where Carse resided, defendant requested him to stop and see Carse, and get him to send to defendant a written 'refusal' of the land for 60 days. Plaintiff met Carse at the Big Rapids depot, and informed him that he had found a probable purchaser for his land,— William Gerber, of Fremont,—and requested him to send Gerber a written 'refusal' for the land, which he did, for 30 days.

" That, at the expiration of the 30 days, defendant went personally to Carse, and got an extension of time on his option, and shortly thereafter purchased the lands for $2,500 cash, and then, through the agency of two men by the names of Jones and Brace, who were dealing in that class of lands, and whom he employed for that purpose, he sold them to one R. Andrew Fleming, of Muskegon, who was unknown to him until said sale was effected, for the sum of $5,950 cash, giving a full warranty deed therefor.

" That defendant necessarily spent about 30 days' time and labor, and expended $100 cash in sundry expenses, in his efforts to sell the land; that he also paid to his agents, Jones and Brace, $1,225 for their services in procuring the purchaser and effecting said sale, paid $247.33 to plaintiff for his services in procuring the 30-day option from Carse for him and showing parties over the land (occupying but four days of his time), besides paying his expenses, $15, while thus showing the land; that after plaintiff had received the $247.33 he brought this suit; that the amount paid the plaintiff was fully all his services were worth, and that the claim he now makes is without foundation, and unconscionable."

Such is the theory of the defendant, and upon these two theories the cause was tried. The jury returned a verdict for plaintiff for $1,500.64, and the defendant brings error. Twenty-four errors are assigned.

The first error assigned relates to the admissibility of the plaintiff's proofs under his pleadings. The defendant insists they are not admissible under the common counts, and that

the agreement which is the subject of the plaintiff's claim is within the statute of frauds, and therefore inadmissible. We think, however, they were admissible. The bill of particulars is quite specific, and states the facts out of which the plaintiff claims the defendant holds money which in justice belongs to him. The case is within our own authorities upon this point ( *Carr v. Leavitt,* 54 Mich. 540, 20 N. W. Rep. 576; *Nugent v. Teachout,* 67 Id. 571, 35 N. W. Rep. 254; *Pierson v. Spaulding,* 61 Id. 90, 27 N. W. Rep. 865), and is not within the statute. This disposes of the second and third assignments of error.

The fourth assignment relates to an exception to the proof of a conversation in which the defendant stated that he sold the land. This was not offered to prove title, but the fact of the conversation in connection with the amount received for the same. This was admissible, and we find nothing said by the court in making the ruling, either in matter or manner, objectionable.

The next six errors assigned may be considered together. They all relate to the admissibility of testimony, or to the refusal of the court to strike out answers given. It must be conceded that the selling of the land could only be done by contract or conveyance, and it was the selling which was one of the conditions precedent to the claim of plaintiff upon his own theory of the case, and of course the object of the proof was to show performance of the conditions upon which it is claimed the promise of defendant was based. The conveyance was in issue, and was the best evidence of the performance of that condition, and it should have been produced, and the court erred in ruling otherwise. The case of *Thompson v. Richards,* 14 Mich. 172, is directly in point.

A Mr. Brace lived at Baldwin, in Lake county. After Gerber bought the land he employed him to assist in making sale of the property, and he sought out Mr. Fleming, who purchased it of Gerber. Mr. Gerber called Mr. Brace, and

proved the above facts by him. On cross-examination he was allowed to testify, against the objection of defendant's counsel that it was irrelevant and immaterial, that Brace obtained the right under agreement with Fleming to work up the timber and have one-sixth interest in it for his work. We think the objection should have been sustained that the testimony was immaterial.

There was no error in allowing counsel for plaintiff to read authorities to the court, even after he had made his opening argument to the jury. This matter was discretionary with the court, and while we cannot hold that it was error not to allow argument upon the authorities at that time, they having been introduced out of the ordinary course of the trial, we think it would have been quite proper for the court to have allowed argument by counsel if desired.

The fifteenth and sixteenth assignments are not much relied upon, and we pass those.

The seventeenth is based upon the refusal of the request to direct a verdict for the defendant. There was no error in refusing this. The case was one proper for a jury.

The nineteenth assignment of error has been disposed of in what has already been said. It relates to the request as to the admissibility of the plaintiff's proofs, and which substantially asks the court again to direct the verdict for the defendant.

The following paragraphs of the charge are also excepted to :

"1. It is immaterial as to the title to these lands, inasmuch as the plaintiff claims no interest in the lands,—does not claim that he had any interest in them, or ever intended to have, or ever was to have any interest; and therefore the title to the lands does not come in question at all. And even if the transaction had been carried out, and the parties who dealt in the lands had no title even themselves, but they had the transaction, and the money was paid over, and it came into the hands of Gerber under the arrangement it is claimed

was made, and he had money in his hands under such transaction, which he should divide, and should pay over, then the plaintiff might recover, no matter about the title to the lands.

" 2. The plaintiff claims, and has given testimony tending to show, that Mr. Gerber, the defendant, practiced a course of deception through all these transactions; that he deceived him as to the price which he paid for the land; that he deceived him as to the price which he received; and that he in many particulars acted dishonestly with him, was guilty of gross deception and fraud. He has given testimony which tends to show that fact.

" 3. But a settlement under such a state of facts as Mr. Davis claims to have existed would be entirely void, and bind nobody. A settlement, in order to be binding upon either party, must be made without any mistake, and also without any deception.

" 4. If the defendant has been guilty of what he has been charged with here, of this deception and this fraud, it is a bad state of affairs.

" 5. I will say to you, gentlemen, upon that point [referring to the amounts paid to Brace and Jones for finding a purchaser for the land], the court, as he announced during the trial, allowed the testimony to come in here, which, perhaps, had but very little to do with the issue. But the court thought, under the circumstances, it ought to be given; that the jury were entitled to all that both claimed. As then announced, fraud and deception were charged; not in the pleadings, but testimony developed that such was the feeling on the part of the plaintiff. And as a matter of course, unless Mr. Davis had something to do with this man Jones, and agreed to that arrangement, or with Mr. Brace, why he should not be held for any moneys that were paid to these parties, unless he consented to it or had something to do with it, or was an interested party in the matter, or had authorized Mr. Gerber to act for him. If the testimony shows that any such thing was a fact; if he had knowledge of what was being done,—negotiations with those parties,—and assented to it, then he would be bound by it.''

In so far as the title to the lands in question was necessary to support the plaintiff's theory (and his case rested upon it), it was material in the issue, and important to a recovery, and to the extent that these charges ignore that fact they are

erroneous. The plaintiff, upon his theory, could recover nothing unless the defendant bought the property, and afterwards sold it. This could not be done except as he received and conveyed the title, and this was a part of the plaintiff's case.

The court may always tell the jury, when he shall deem it proper or necessary, for what purpose certain testimony was received, but it is not proper for the court to say to them, after the evidence is in, what that testimony tends to show or prove, unqualifiedly, and without submitting to them in the same connection the question of its credibility. Whether the testimony does or does not tend to prove any particular fact depends entirely upon whether the jury believe the testimony, and its credibility is for the jury always, and not for the court; and, so far as the foregoing charges pass upon the credibility of the testimony, they are erroneous. *Perrott v. Shearer*, 17 Mich. 48; *Blackwood v. Brown*, 32 Id. 104; *Hayes v. Homer*, 36 Id. 374; *Richards v. Fuller*, 38 Id. 657.

We see no objection to the charge upon the subject of settlement.

Much of the last charge above mentioned, numbered five, was based upon certain testimony that was improperly received, and which, of course, would render it erroneous; and so far as it states the tendency of the testimony, and what it shows, it is also erroneous.

For the reasons given the judgment must be reversed, and a new trial granted.

MORSE and LONG, JJ., concurred with SHERWOOD, C. J.

CAMPBELL, J. I concur in reversal, for the grounds stated, and on the further ground that the contract, as plaintiff swore to it, was one in which he was to have such an interest as comes within the statute of frauds.

CHAMPLIN, J., did not sit.