## ALBERT H. PETRIE v. JOHN TORRENT.

*Accounting—Equity jurisdiction—Remedy at law—Statute of frauds.*

Complainant held a verbal option under which he had the right to purchase certain tracts of pine land, mills, and a lumbering outfit within a given time and at a stated price, or secure a purchaser therefor. Not having sufficient means to make the purchase, he applied to the defendant, who agreed to pay one-half of the expense of examining the timber, and, if such examination proved satisfactory, to furnish the money with which to purchase the land and other property, and to give to complainant one-third of the net profits resulting from the transaction; in consideration of which complainant agreed to pay the remainder of the expense of such examination, and to give to defendant the sole opportunity to make the purchase, and to contribute his services in carrying out the enterprise. The purchase was made at a cost of $769,000, and the title taken in defendant's name, who, with complainant's assistance, sold enough of the lands to amount to over $778,000, and contracted for the manufacture of the remainder of the timber, one-half of the gross receipts of which he was to receive, the value of which timber was estimated at over $300,000. After the defendant had received over $150,000 of such receipts, and on his refusal to account with the complainant for his share of the net profits as per his said agreement, complainant filed a bill for such accounting. And it is held that the duty of the defendant to keep and render to the complainant an account of the *whole* transaction is clear, complainant having a special interest in the profits; and that his bill is properly filed, and that he should not be remitted to a court of law to recover his share of said profits.

Appeal from Muskegon. (Dickerman, J.) Argued June 9, 1891. Decided October 16, 1891.

Bill for an accounting. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Bunker & Carpenter (Blair, Kingsley & Kleinhans,* of

88 43
90 265

88 43
95 439

88 43
98 131

88 43
99 68

88 43
100 117

88 43
102 46

88 43
105 433

88 43
s 107 649

88 43
d 118 238

88 43
139 606

88 43
142 150
142 155
142 156

88 43
147 506
148 328

counsel), for complainant, contended for the doctrine of the opinion, in which their authorities are cited.

*Smith, Nims, Hoyt & Erwin,* for defendant, contended:

1. The action was prematurely commenced, and in the wrong court. Complainant's right of action had not matured, and he does not pretend to set up any grounds requiring his protection by this court in the matter. It should appear in his bill that adequate relief is not practicable in a court of law; citing *Willson v. Owen,* 30 Mich. 474; *Teft v. Stewart,* 31 Id. 367, 371; *Hagenbuch v. Howard,* 34 Id. 3; *Bridge Co. v. Van Etten,* 36 Id. 210; *Torrent v. Rodgers,* 39 Id. 85; *Edson v. Gates,* 44 Id. 253.

2. Again, if the account was one which might be readily investigated by a jury, the necessity for equitable interference does not exist, and it seems that in that case no equity will arise; and if the facts stated in the bill show no practical difficulty in proceeding at law, a mere indefinite allegation that the accounts are intricate will not prevent a demurrer; citing Adams, Eq. 226; *Monk v. Harper,* 3 Edw. Ch. 109; *Gloninger. v. Hazard,* 42 Penn. St. 401; *Foley v. Hill,* 1 Phillips, 399; 1 Pom. Eq. Jur. §§ 130, 131, 139, 140, 424; and cases in which the remedy is mere recovery of money do not ordinarily come in the concurrent jurisdiction; citing 1 Pom. Eq. Jur. § 138; *Badger v. McNamara,* 123 Mass. 117; *Frue v. Loring,* 120 Id. 507; *Ward v. Peck,* 114 Id. 121; *Blood v. Blood,* 110 Id. 545; *Dinwiddie v. Bailey,* 6 Vesey, 136; *Foley v. Hill,* 2 H. L. Cas. 28; *Appeal of Building Association,* 83 Penn. St. 441, 445; *Jewett v. Bowman,* 29 N. J. Eq. 174; *Smith v. Bodine,* 74 N. Y. 30, 33.

*Benton Hanchett,* of counsel for defendant, contended:

1. It is entirely competent for one to agree to render services to another on the promise of the latter to pay a certain sum for such services upon the happening of a named event or contingency, as on the death of the person, or the arrival of a ship, or the promisor making a profit on the result of a trade, and in such case the remedy for the recovery of the pay for the services rendered is by an action at law, when the contingency upon which the payment is made to depend shall have arisen; citing *Sword v. Keith,* 31 Mich. 247, 254; *Carr v. Leavitt,* 54 Id. 540; *Davis v. Gerber,* 69 Id. 246; *Insurance Co. v. Robinson,* 1 Johns. 616, 623, 624; *Thompson v. Stevens,* 71 Penn. St. 161; and, the remedy being complete at law, a suit in equity will not be sustained; citing *Teft v. Stewart,* 31 Mich. 367, 372;

*Hagenbuch v. Howard,* 34 Id. 1; *Bridge Co. v. Van Etten,* 36 Id. 210; *Torrent v. Rodgers,* 39 Id. 85.

2. The case made by the bill is not sustained by the evidence. The case stated in the bill is a simple and distinct agreement to pay *for services* to be rendered by Petrie for Torrent, and it is upon this case only that recovery can be had in this suit, and the evidence which shows a different case cannot be used as a basis of recovery; citing *Ford v. Loomis,* 33 Mich. 121, 122; *Connerton v. Millar,* 41 Id. 608, 612; *Elliott v. Insurance Co.,* 49 Id. 579, 583; *Kelly v. Kelly,* 54 Id. 30, 45; *Huggett v. Case,* 61 Id. 480, 486.

3. Complainant's interest in the lands was this, viz.: Deducting from the value of the property purchased the amount of the purchase price, one-third of what remained would be Petrie's, and Torrent took and held the title to the lands for Petrie's benefit to that extent. This constitutes a trust in the lands; citing 1 Perry, Tr. §§ 2, 82, 122; *Compo v. Iron Co.,* 49 Mich. 39; *Cochrane v. Adams,* 50 Id. 16, 19; *Seymour v. Freer,* 8 Wall. 202, 213, 214; *Culbertson v. Witbeck Co.,* 127 U. S. 326, 334, 335.

4. The agreement which is shown by the testimony of Petrie is an oral agreement for an interest in lands, by which a trust was sought to be created in the lands in his favor. It is within the statute of frauds, and cannot be enforced; citing *Newton v. Sly,* 15 Mich. 391, 396; *Liddle v. Needham,* 39 Id. 147; *Rawdon v. Dodge,* 40 Id. 697; *Hillebrands v. Nibbelink,* Id. 646; *Sutton v. Rowley,* 44 Id. 112; *Shafter v. Huntington,* 53 Id. 310, 315, 316; *Raub v. Smith,* 61 Id. 543; *Pulford v. Morton,* 62 Id. 25, 28; and an oral contract, which is void because within the statute relating to lands, cannot be used for any other purpose; citing *Sutton v. Rowley,* 44 Mich. 112; *Hillebrands v. Nibbelink,* 40 Id. 646.

5. It is not contended that under the agreement as testified to by Mr. Petrie, and the facts related in his evidence, he is without a remedy. The contention is that he is not entitled to the remedy which he seeks by this suit. His evidence shows an agreement which is void by the statute of frauds, under which he claims to have paid money and to have rendered valuable services. In such case the remedy at law is clear to recover for the money paid, and for the value of the services rendered; citing *Scott v. Bush,* 26 Mich. 418; *Sutton v. Rowley,* 44 Id. 112; *Cadman v. Markle,* 76 Id. 448; *Dix v. Marcy,* 116 Mass. 416; *Dowling v. McKenney,* 124 Id. 478, 481.

LONG, J. This bill is filed for an accounting.

The complainant has for many years been engaged in the general lumber business in this State. He resides at Muskegon. The defendant also resides at Muskegon, and is a lumberman.

The bill alleges substantially as follows:

That the firm of Hannah, Lay & Co., a copartnership of Traverse City, this State, prior to September 23, 1885, were the owners of large tracts of pine timber lands, situate in the counties of Grand Traverse and Kalkaska, this State, and of saw-mills situate at Traverse City and on Long Lake, in Grand Traverse county, and of a lumbering outfit.

That about the 3d day of December, 1885, complainant, after repeated negotiations with Mr. Hannah, of the firm of Hannah, Lay & Co., for the option to purchase said timber lands, saw-mills, and lumbering outfit, entered into an agreement with said firm by which they agreed to give him the first chance of purchasing said properties, or to find a purchaser therefor, in the following spring, or as soon as Mr. Hannah returned from Europe, at the price of $2 per thousand feet for the timber, with the right to the complainant, or whoever he might interest in the matter, to send men upon the lands to estimate the quantity and ascertain the quality of the timber thereon, in order to determine whether to make the purchase of the said properties; and that on Mr. Hannah's return from Europe the following spring the firm would sell to the complainant, or to any person he might find, for the above-stated price, said timber, and also the saw-mills and the lumbering outfit.

That, lacking adequate capital to make the purchase of said properties, complainant set about finding a purchaser therefor, and to that end entered into negotiations with the defendant to induce him to become a purchaser, advising him of the negotiations he had had with the firm of Hannah, Lay & Co.; that on March 10, 1886, he had a conversation with the defendant relative to the purchase of said lands and saw-mills and lumbering outfit, in which conversation it was arranged and understood between him and defendant that said defendant should and would furnish the capital necessary to purchase such lands, saw-mills, and lumbering outfit, provided, on further investigation, it should turn out to be a desirable

investment; and that it was further arranged, understood, and agreed by and between them that, in order to make said investigation in accordance with the arrangement made with Hannah, Lay & Co., each should select a man to go over and upon said lands to estimate the quantity and ascertain the quality of the timber thereon, to enable the defendant to determine whether he would purchase the same in accordance with complainant's agreement with Hannah, Lay & Co., and, in case no purchase should be made by the defendant, each of the parties should pay the expense incurred by him in employing said men in estimating the timber, and, on the other hand, in case a purchase should be made under such agreement, defendant should pay to the complainant for his services in looking up said tracts of land, saw-mills, and lumbering outfit, in securing the said first chance to purchase the same, and in giving to defendant the sole opportunity to purchase the same, and for all of complainant's services in connection therewith, one-third of the net profits which should be realized from such purchase; and that the defendant on that date, to wit, March 10, 1886, then and there promised and agreed to and with the complainant, for the consideration aforesaid, to pay to the complainant one-third of the net profits which should be realized from the purchase of said lands, saw-mills, and lumbering outfit, on the sale or other disposition of said properties.

That about the 7th of April, 1886, in pursuance of the arrangement, each party employed a man to go upon and over the lands for the purpose of estimating the quantity and ascertaining the quality of the timber thereon; that the men completed their work July 4, 1886, and made their report to the complainant and defendant two days thereafter, and that complainant expended therein about the sum of $1,000.

That while the men were so engaged the parties were informed by Hannah, Lay & Co. that the stumpage price of the timber would be $3 per thousand feet, and that the complainant was laboring under a mistake in supposing the purchase price was $2; that, in pursuance of this communication, complainant had a conversation with defendant, on May 10, 1886, in which it was arranged and agreed that, notwithstanding this modification of the purchase price, the men so employed should complete their work, and that the defendant would make the purchase at the

increased price, and pay to the complainant one-third of the net profits which should be realized out of the purchase.

That from and after the 23d day of September, 1885, and up to the time of the purchase by the defendant, complainant faithfully devoted his time, skill, and energy in securing to the defendant the said properties; that he conducted all of the negotiations with Hannah, Lay & Co. relative to the purchase, visited Traverse City frequently to confer with that firm, and when the option had about expired procured an extension, and when the option so extended had elapsed he procured its restoration for a sufficient length of time to enable the defendant to perfect his arrangements to raise the necessary funds to make the first payment; that on or about the 15th of October, 1886, when defendant was wavering with reference to making said investment, and had virtually abandoned the hope of making said purchase, he suggested to the defendant, and secured from Hannah, Lay & Co., a modification of the terms and conditions of the purchase, and a further extension of the time, by which the defendant was enabled to raise the funds for a cash payment on said purchase.

That about November 7, 1886, in pursuance of said arrangements, and in performance thereof, the defendant purchased said lands, saw-mills, and lumbering outfit, and received proper deeds of conveyance therefor; that said defendant paid for said lands, saw-mills, and lumbering outfit the sum of $769,000, of which amount $500,000 was paid in cash, and the balance secured by mortgage on part of the property conveyed; that for a long time prior to the purchase complainant had been actively engaged, both independently and in connection with defendant, in looking up purchasers for portions of said lands and parts of said property from defendant, in event of his purchase from Hannah, Lay & Co., in order to enable the defendant to make the purchase; that after the purchase he continued his efforts to make further sales for the defendant until the entire property had been disposed of, except that portion covered by defendant's contract with the Smith Lumber Company, hereinafter referred to.

That prior to July 1, 1887, the defendant, with complainant's advice and assistance, had sold all of said lands, saw-mills, and lumbering outfit in the county of Grand Traverse, and portions of the lands in the county

of Kalkaska, to various persons, firms, and corporations, for the aggregate sum of $778,000 and upwards, which said sum the defendant had received in cash or commercial paper, or securities equally good as cash, and that all of such commercial paper and securities have at this time been converted into cash; and that after making said sales there remained to the defendant a part of said lands situated in the county of Kalkaska, upon which there was upwards of 60,000,000 feet of valuable pine timber, well worth the sum of $300,000 and upwards, which pine timber and lands represented the net profits realized on said purchase.

That on or about December 15, 1886, defendant entered into a written contract with the Smith Lumber Company of Kalkaska, Mich., by which it was to cut, log, and manufacture into lumber the timber from the last-named lands, and sell the lumber so manufactured by it, and turn over to the defendant one-half the gross receipts therefor; that the complainant was consulted by the defendant with reference to making this contract, and with reference to the terms and conditions thereof, and counseled, advised, and aided defendant in all things pertaining thereto; that the said Smith Lumber Company, shortly after making the contract, entered upon the work of cutting the said timber, and manufacturing the same into lumber at Kalkaska, and has since continually been, and is still, engaged in cutting, logging, manufacturing, and selling the same, and has turned over one-half the proceeds of said sales to the defendant; that said defendant has received large sums of money from the proceeds of said sales, which he has appropriated to his own use, and has received monthly, as his share of the proceeds of said sales, in accordance with said contract, from $12,000 to $15,000, and that he has already received, as proceeds from said sales under the contract, upwards of $150,000, which he has appropriated and applied to his own use.

That the moneys so received by the defendant are a portion of the net profits which have been realized on said purchase and sale of said properties, and that the remainder of said net profits is represented by the said lands and the timber thereon, which is upwards of 30,000,000 feet, and worth the sum of $150,000; that the defendant has refused to account to complainant for any

sums so received as net profits on said purchase, and refuses to pay to him his just portion of the same, or any part thereof; that complainant has frequently applied to the defendant to come to a full and fair accounting respecting said profits, and to pay to him his share thereof, but that the defendant has put him off from time to time, upon one pretense or another, and has finally stated that he would not account for nor pay to him any portion of said net profits until he was ready.

The bill waives an answer under oath, and prays for an accounting of the profits realized by the defendant, and the payment to complainant of his share thereof.

The answer alleges that, in the early part of the year 1886, complainant said to the defendant that he had an option on the lands, lumbering outfit, and property of Hannah, Lay & Co.,—the timber lands at a valuation of $2 per thousand feet for pine timber, and the mills to be taken at a valuation or impartial appraisal to be thereafter made,—and wished him to become interested in the purchase under such option; that defendant expressed a willingness to consider the matter, but entered into no agreement with complainant concerning the same; that the defendant thereafter ascertained from Mr. Hannah, of the firm of Hannah, Lay & Co., that complainant had no option or agreement from that firm of the kind or to the purport or effect alleged by complainant in his bill; that in fact Mr. Hannah had no confidence in the complainant, and would not enter into any transaction of that kind or character respecting said land; that defendant, being desirous of purchasing pine timber lands in the spring of 1886, sent his men upon the lands of Hannah, Lay & Co. to estimate the timber thereon; that such estimate was not made in pursuance of any agreement with the complainant, but for defendant's information, and at his own expense; and he expressly denies that he entered into any understanding or agreement with the complainant to purchase the same, or jointly to estimate the timber upon the lands; or to pay to the complainant any part of the net or other profits that might arise to the defendant therefrom on the purchase of the same. He denies that he had any understanding or agreement with the complainant respect-

ing the premises or by which each was to employ a man to go over the lands and estimate the timber thereon, but says that he sent a man upon his own responsibility for that purpose, and that he is informed that the complainant did likewise; that he paid the man so employed by him, but is not advised whether the complainant paid any sum for such purposes.

Defendant denies that on or about May 10, 1886, or at any other time, it was understood or agreed between him and complainant that if he made the purchase he should pay to the complainant one-third of the net profits which should be realized on the sale or other disposition thereof, and avers that if complainant expended money in looking up the lands, and employed men therefor, it was at his own risk, and not under the employment, charge, or risk of the defendant in any manner, nor upon any agreement or understanding that defendant should repay him therefor.

Defendant further says that after the negotiations were opened by him with Hannah, Lay & Co. for the purchase of these properties, and while said negotiations were pending, the complainant (who at that time purported to be doing business in the neighborhood of Hannah, Lay & Co., at Traverse City) exercised his neighborly services on one or two occasions to ask the said Hannah, Lay & Co. to extend the time for the completion of said negotiations, but that said conduct on the part of complainant was done by him as a matter of accommodation to defendant, as defendant understood it,—a mere neighborly service; that such acts and doings were at very little time or expense to complainant. Defendant denies that complainant procured any modification of any agreement to purchase from Hannah, Lay & Co., and avers that he had no authority from the defendant to do anything of the kind, nor was he requested so to do by defendant in any way.

The remainder of the answer is a complete denial of complainant's claim in the bill; avers that he has no rights or interests in the lands remaining unsold in the county of Kalkaska; charges that the complainant is justly and equitably indebted to defendant in the sum of over $25,000; and claims the benefit of a cross-bill, and prays for affirmative relief.

The defendant also denies that the complainant under his bill is entitled to any relief in a court of equity, and asks the same advantage of his answer as if he had pleaded or demurred to the bill. After the cause was at issue by filing general replication, the proofs were taken in open court in the Muskegon circuit, in chancery, the same as in a suit at law, on which hearing the defendant was not called as a witness, and put in no evidence, except the deposition of Perry Hannah, of the firm of Hannah, Lay & Co., and of one John Thorsen, and the following decree was entered:

"1. That the contract set forth by the complainant in his bill of complaint has been fully proved and established; that it is a valid and binding contract between the parties thereto; that by its terms the defendant agreed to furnish the money to make the purchase, and to purchase, from Hannah, Lay & Co., of Traverse City, Mich., the lands, timber, and other property mentioned in said bill of complaint, to sell the same, and to pay to the complainant for his services and expenses in connection with the enterprise, and for securing and giving to the defendant the first chance to purchase said property, one-third of the profits derived from such purchase and sales; that at the time the bill of complaint was filed in this cause the complainant had fully and faithfully performed all that was required of him by said agreement; that the defendant had purchased and paid for the property before mentioned; that he had sold and received payment for all the same, except a certain tract of timbered land in Kalkaska county, in this State; that on the 9th day of November, 1886, with the advice and consent of the complainant, he had entered into a contract with the Smith Lumber Company of Kalkaska, a corporation organized under the laws of the State of Michigan, for the manufacture and sale of the timber on the before-mentioned lands in Kalkaska county; that that contract is still being executed, and that under it the defendant has received, as a portion of the proceeds of the timber cut from the Kalkaska county lands, a large sum of money, representing in part the profits derived from the purchase and sales of the property covered by the agreement.

between complainant and defendant; that when the bill was filed defendant had received from the sales made and from the Smith Lumber Company a sum largely in excess of the amount paid Hannah, Lay & Co. on the purchase of the property, and the expenses consequent thereon.

"2. That the making by the complainant and defendant of said agreement, and the partial execution thereof, established between them relations of such a confidential and fiduciary character as entitled the complainant to a statement from the defendant of the receipts and disbursements connected with the enterprise, and to payment of his share of the profits thereof, and to further statements and payments from time to time of the receipts under the contract with the Smith Lumber Company, and made it the duty of the defendant to render such statements on the request of the complainant, and to pay him his share of the profits at reasonable intervals; that the defendant has refused to render such statements or make such payments to the complainant, and has denied his rights to the same, and to any participation in the profits of the transaction, and defendant has appropriated and converted to his own use all the profit moneys received by him.

"3. That the complainant was and is entitled to a distribution of profits from time to time, and to receive one-third thereof as they accumulate, until the enterprise is finally closed, less such sums, if any, to be left in defendant's hands as would be deemed proper, under the circumstances, to guard against future loss; and, on the termination of the enterprise, complainant will be entitled to a final distribution and payment of his share of all the profits realized, and not previously paid to him.

"4. That an account be taken by this court of all the receipts and disbursements of the complainant and defendant arising out of the contract and relations hereinbefore mentioned and set forth, for the better clearing of which account the parties are to bring in their accounts, and produce before the said court, upon oath, if required, and leave with him, all books and writings in their custody or control relating thereto, and are to be examined upon interrogatories as the said court shall direct; and said court shall also have power to examine other witnesses in relation to said account; and in taking said account he is to make to both parties all just allowances, including such items of interest as shall be just and

equitable, and is to determine what upon such account-ing appears to be due from each party to the other, and also the balance which upon such account shall appear to be due from either party to the other; that, after said accounting is taken, the defendant shall, on or before the 15th day of January and July in each year during the continuance of the enterprise, file with the register of this court a written statement, under oath, of all moneys received and disbursed by him from or on account of said enterprise prior to the first day of such month, and of the condition of the property undisposed of, and shall pay to the complainant his share of the profits on the 15th day of January in each year.

"5. This court reserves further consideration of this case, and of all matters therein involved, until after the taking of such account; and either party is at liberty at any time to apply to the court as occasion shall require."

From this decree defendant appeals.

The contention in this Court upon the part of the defendant is:

1. That the case made by the bill of complaint is a case for which the complainant has an action at law to recover the agreed compensation for services rendered by complainant for defendant, or to recover for a breach of the contract under which such services were rendered; that the remedy is not by a bill in equity, on the case as it is stated in the bill. It is claimed that the state-ment of the contract in the bill is a distinct contract of employment of the complainant by the defendant in the rendering of services, and to pay for the services rendered a sum which should be determined and fixed by the con-tingency of the purchase of the property of Hannah, Lay & Co., and the realizing of profits from such purchase; that, taking the case as thus stated in the bill, the com-plainant would be entitled to recover, in an action at law, either one-third of the value of this tract of timber and lands, which represented the profits realized on the purchase, or, if by the terms of the contract it may be contended that the defendant was under obligation to sell the property, and pay over one-third of the proceeds, and he should neglect or refuse to do it within a reason-able time, the complainant would be entitled to maintain his action for the damages suffered by him by such

neglect or refusal, which damages would be equal to one-third of the value of the property; that a right of action to recover in such case is as clear as a right of action at law would be to recover for the sum of $100,000 in money, had the agreement been on the part of Torrent that he would pay the complainant for his services the sum of $100,000 in case he should make the purchase from Hannah, Lay & Co., and should make a profit on the purchase.

2. That the case made by the bill is not sustained by the evidence.

3. That the agreement which is shown by the testimony of the complainant is an oral agreement for an interest in lands, by which a trust was sought to be created in the lands in favor of complainant; that it is within the statute of frauds, and cannot be enforced.

4. That it is not contended, under the agreement as testified to by the complainant, and the facts related in his evidence, that he is without remedy, but the contention is that he is not entitled to the remedy which he seeks by this bill.

5. That the complainant cannot recover on the ground that there was a partnership between him and the defendant, as no partnership is averred in the bill, and the agreement which is stated in the bill does not itself constitute a partnership.

6. That the bill cannot be sustained on the ground of fraud; that there is no case of fraud stated in the bill, or any acts which would constitute a fraud.

7. That the bill does not state a case for an accounting.

What are the relations between these parties under the claim made by the bill? The complainant held options upon these properties, under which he had the right to purchase them within a given time, or to find a purchaser therefor. He communicated this fact to the defendant, who agreed to pay one-half the expense to investigate the timber, and, if the investigation was satisfactory, to furnish the money to purchase the entire property. If the purchase was so made, then he agreed to give to the complainant one-third of the net profits

resulting therefrom. In consideration of this agreement and undertaking on the part of the defendant, the complainant was to pay one-half of the expense of the investigation of the timber, and, if the investigation proved satisfactory to the defendant, then to give him the opportunity to make the purchase, and to contribute his services in carrying out the transaction. It is alleged that the agreement thus made was carried out, and the purchase made, but that defendant refuses to account for the profits accruing therefrom.

The complainant trusted the whole matter to the defendant. He had looked the scheme over for the purchase of the properties, and believed that there was a large profit in it. He procured from Hannah, Lay & Co. the right to purchase, and let the defendant into the scheme. He worked it up, assisted the defendant to make the purchase, and permitted him to take the whole properties in his own name, in reliance upon his agreement to account to him for one-third of the net profits. From these facts it appears that the defendant accepted the trust, and agreed to carry out the terms and conditions of the agreement. The complainant had confidence that the whole matter would be safe in Mr. Torrent's hands, and that as trustee he would faithfully discharge the duties and obligations resting upon him as such. Complainant comes into a court of equity for relief, and is met with the proposition that his right to recover is not denied, but that he is attempting to inforce his right in the wrong forum. We think not. Under the contract as claimed by the bill, the duty of the defendant to keep and render an account of the whole transaction to the complainant is clear. The complainant has a special interest in the profits, and he has a right to know how the account has been kept, what the trustee has done, and the balances from time to time since the amount of

the purchase price has been paid. Equity will retain jurisdiction where fiduciary relations exist between the parties, and a duty rests upon the defendant to render an account.

In *Darrah v. Boyce*, 62 Mich. 486, it was said by this Court:

"It is true, the relation between the parties was not that of partners, but the trust reposed in and the business to be carried on by the defendant, and the accounting he was required to make, were fully equal to those of a partnership, and quite as confidential. * * * He was in possession of all the books and accounts relating to the business, and refused to give any account of sales, or of the place where made, or the amounts received on sales. Some sort of discovery is certainly necessary, and while, to some extent, it may be obtained in a court of law, perfect and complete disclosures as to all these matters may be obtained in a court of equity."

In *Clarke v. Pierce*, 52 Mich. 157, it appears that Clarke filed a bill to obtain an accounting for his share of the proceeds of a certain lumber business carried on upon joint account. The chief contest was concerning Clarke's right to have defendants account for the proceeds of the business, and concerning his share in the results. It was there said by Mr. Justice CAMPBELL:

"We have no doubt that Clarke was to have one-half of the profits, and that he was entitled to compel defendants to an accounting. He is not confined to his remedy at law, whether they were partners or not. The jurisdiction for accounting covers all fiduciary relations where the duty of keeping and rendering accounts exists, and, while there are cases in which the common-law remedy may be adequate, we do not think the present case is such that he ought to be turned out of a court of equity to seek an action at law."

We take it to be the well-established rule that the existence of fiduciary relations between the parties is sufficient to confer jurisdiction upon a court of equity

whenever the duty rests upon the defendant to render an account. *Bank v. Insurance Co.*, 104 U. S. 54; *Dillon v. Insurance Co.*, 44 Md. 394; *Hargrave v. Conroy*, 19 N. J. Eq. 281; *Garr v. Redman*, 6 Cal. 574; *Bentley v. Harris*, 10 R. I. 434; *Hallett v. Cumston*, 110 Mass. 32; *Channon v. Stewart*, 103 Ill. 541; *Alpaugh v. Wood*, 45 N. J. Eq. 153 (16 Atl. Rep. 676); *Jackson v. King*, 82 Ala. 432 (3 South. Rep. 232); *Pratt v. Tuttle*, 136 Mass. 233; *Seymour v. Freer*, 8 Wall. 202.

In *Seymour v. Freer, supra,* the bill was filed for an accounting upon a contract somewhat similar in its nature to the one under consideration. It was there claimed, as it is claimed here, that for any violation of the contract the complainant had a remedy at law, and that neither he nor his legal representative could have any other. It was said by the court:

"An action at law sounding in damages may undoubtedly be maintained in such cases for the breach of an express agreement by the trustee, but this in no wise affects the right to proceed in equity to enforce the trust and lien created by the contract. They are concurrent remedies. Either which is preferred may be selected. The remedy in equity is the better one. The right to resort to it, under the circumstances of this case, admits of no doubt, either upon principle or authority. Such, in our judgment, were the effect and consequences of the contract."

Under the well-settled rules in this State, however, complainant has no right to proceed in equity if he has an adequate remedy at law; and it is upon this claim that defendant's counsel contend that the proceedings by the complainant should have been at law rather than equity. Counsel for defendant cite upon this proposition: *Carr v. Leavitt*, 54 Mich. 540; *Davis v. Gerber*, 69 Id. 246; *Sword v. Keith*, 31 Id. 247; *Bay City Bridge Co. v. Van Etten*, 36 Id. 210. Under the facts in the present

case and claim made by the bill, we do not think the cases cited by the learned counsel are decisive of this case. Those were actions at law, except *Bay City Bridge Co. v. Van Etten, supra.* In that case a bill was filed for an accounting against the directors of the Bridge company, upon the ground that they fraudulently voted to themselves money for services performed as officers of the company, and wrongfully used the company's moneys. It was there said:

"The complainant seeks to maintain his bill on two grounds:
"1. As a bill to bring the trustees to an account for the misappropriation of moneys belonging to the trust.
"2. On the ground that it saves a multiplicity in suits."

Upon the second ground the Court say:

"There is certainly no multiplicity of suits to be saved, and, * * *, if the defendants combined in a fraud, they can be sued jointly at law as well as in equity."

Upon the first ground it was said:

"As to the profits said to have been made by the officers from the use of the company's moneys, we have also general allegations only, and the bill does not aver that the amount is sufficient to give the court jurisdiction on that ground alone."

We are therefore of the opinion that the bill was properly filed for the accounting, and the complainant, under the contract set out in the bill, should not be remitted to a court of law for the recovery of his share of the profits stated in the contract.

We do not think the record bears out the claim made by defendant's counsel that the case made by the bill is not sustained by the evidence. Complainant's testimony

states the contract made between him and the defendant substantially as it is stated in the bill. He testified, substantially, that defendant agreed with him that each should bear one-half of the expense of estimating the timber, and, if nothing came of it, each should bear his own loss, but, in case it should turn out to be a trade, defendant agreed to give him one-third of the profits realized, and to furnish all the moneys to make the purchase. This is substantially the contract as claimed by the bill.

The third contention of defendant's counsel is, as stated, that the agreement, as shown by complainant's testimony, was for an interest in lands, by which a trust was sought to be created in the lands in favor of complainant, and therefore it is within the statute of frauds, and cannot be enforced. The contract cannot have this construction. The case falls directly within the ruling of this Court in *Carr v. Leavitt, supra,* upon that point. It was there said:

"If the contract the plaintiff relied upon was within the statute, it must have been because it contemplated a purchase, and then a sale, of certain lands. But the plaintiff was to be neither purchaser nor seller, and the contract did not contemplate that in any contingency an interest in the land was to be conveyed to or vested in him. It contemplated only that in a certain event the plaintiff should receive a share of the moneys that a sale of the land should bring. His interest was therefore in these moneys, and not in the land itself. And the moneys were to be payable to him in consideration of services performed. The profits on the two trades, to be brought about by the plaintiff, were to be taken as the measure of compensation, instead of any other that might have been agreed upon. This surely was not a contract 'for the sale of any lands, or any interest in lands,' within the meaning of the statute of frauds."

See, also, *Davis v. Gerber*, 69 Mich. 246, and cases there cited.

In the present case there is no claim upon the part of the complainant that he was ever to acquire any interest in these lands or properties. The title was to be taken in the name of the defendant, and the only interest which the complainant had or claimed to have was the profits arising from their sale. It is true that the lands which the Smith Lumber Company is now lumbering represent, in the hands of defendant, who holds the legal title, a portion of the profits arising from the contract between the parties; but, under the arrangement between them, these lands were to be lumbered, and the profits arising therefrom to be apportioned, one-third to the complainant. The defendant denies that complainant has any interest therein.

We think that the conclusion reached by the court below as to the rights of the parties, and the manner in which the complainant's share of profits was to be ascertained, does no injustice to either party.

The decree of the court below must therefore be affirmed, with costs.

The other Justices concurred.