## No. 34,062

CHARLES E. McCRAE and G. K. HARRIS, *Appellees,* v. THE BRADLEY OIL COMPANY and EDWIN G. BRADLEY, *Appellants.*

(84 P. 2d 866)

Opinion filed December 10, 1938.

*J. B. McKay,* of El Dorado, *Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellants.

*W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, W. G. Muir,* all of Wichita, and *Cornelius Roach,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This was an action by real-estate brokers to recover under an oral contract for services in procuring and bringing about a sale to defendants of an interest in an oil and gas lease. The compensation claimed was $4,000 in cash and 20,000 barrels of oil out of any oil produced from the land described in the lease. Defendants' motion to strike that part of the petition relating to the 20,000 barrels of oil was overruled. A demurrer to the petition was also overruled. From these orders and judgments defendants appeal.

The petition recites:

"3. That on or about the first day of September, 1935, the defendants orally employed plaintiffs for the purpose of inducing and bringing about the sale to defendants of a six-sixteenths interest in a certain oil and gas lease covering land in Rice county, Kansas, and described as follows, to wit:

(Description of land.)

"4. That for their services in procuring and bringing about such sale and purchase, defendants orally contracted and agreed to pay to plaintiffs the sum of four thousand dollars ($4,000) cash, and twenty thousand (20,000) barrels of oil out of any oil produced from said land hereinabove described.

"5. The plaintiffs, in performance of such agreement, brought together the Harburney Oil Company, owner of said six-sixteenth interest in said oil and gas lease, and defendants, and on or about September 14, 1935, defendants and the owner of said six-sixteenths interest in said oil and gas lease entered into a written contract for the sale and purchase of said interest, and said contract of sale and purchase was thereafter fully performed and carried out.

"6. That thereafter said oil and gas lease was fully developed, eight (8) wells having been drilled thereon, and each of said wells then produced, and are now producing, oil in large quantities, said eight (8) wells now having a potential flow in excess of fifteen thousand (15,000) barrels of oil per month.

"7. That pursuant to and in part performance of said agreement between plaintiffs and defendants, defendants paid to plaintiffs for their said services rendered to defendants, the sum of two thousand dollars ($2,000) cash, but although demand has been made upon defendants the defendants have wholly failed, neglected and refused to pay to plaintiffs the balance of two thousand dollars ($2,000) cash, and twenty thousand (20,000) barrels of oil due and owing plaintiffs under the terms and conditions of said contract of employment between plaintiffs and defendants, and there is now justly due and owing to plaintiffs from defendants the sum of two thousand dollars ($2,000) cash, and twenty thousand (20,000) barrels of oil.

"8. That twenty thousand (20,000) barrels of oil from the production of oil from said oil and gas lease hereinabove described is of the reasonable market value of twenty-six thousand dollars ($26,000).

"Wherefore, plaintiffs pray judgment against defendant in the sum of twenty-eight thousand dollars ($28,000), with interest thereon at the rate of six (6) percent per annum from January 1, 1937, and all costs in this action accrued."

The question presented is whether the oral agreement, so far as it relates to the twenty thousand barrels of oil, is within the statute of frauds.

Our statute, G. S. 1935, 33-106, so far as presently material, provides:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, . . ."

In 2 Williston on Contracts (Rev. ed.), section 493, it is stated:

"It is only contracts for the sale of any interest in land which are affected by the statute. Accordingly, contracts which relate to land but do not involve agreement for its sale are not within the statute."

Not every contract that touches or concerns land is within the statute. Thus a contract to settle a disputed boundary, if the line agreed upon is not the true line, would seem necessarily to involve a contract to convey land—yet such contracts, though not in writing, are upheld. (*Edwards v. Fleming,* 83 Kan. 653, 663, 112 Pac. 836; *Steinhilber v. Holmes,* 68 Kan. 607, 75 Pac. 1019.)

An oral contract to partition land would seem to be unenforceable as within the statute of frauds as it involves a conveyance, or promise to convey land, but such contracts are sustained. (*McCullough v. Finley,* 69 Kan. 705, 77 Pac. 696; *McCullough v. McCullough,* 109 Kan. 497, 200 Pac. 298.)

We have held an oral agreement to give security on real estate may be enforced. (*Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 242 Pac. 466.)

Ordinarily a building is a part of the land upon which the building is located (*Docking v. Frazell,* 34 Kan. 29, 7 Pac. 618), but a chattel mortgage on a hotel building has been sustained (*Docking v. Frazell,* 38 Kan. 420, 17 Pac. 160), and a parol contract for the sale of a dwelling house has been held to be enforceable. (*Wetkopsky v. New Haven Gas Light Co.,* 88 Conn. 1, 90 Atl. 30, Ann. Cas. 1916D, 968.)

In the Wetkopsky case, which is a leading case on this subject, the court said:

"The plaintiff claims that the sale of a house to be immediately removed from the land on which it stands and to which it is affixed is a sale of personal property and not of an interest in real estate, and so is not within the section of the statute of frauds which prevents the maintenance of an action upon agreements for the sale of real estate unless the same shall be in writing.

"Browne, in his first edition, after reviewing the early cases relating to this section of the statute as bearing upon sales of fixtures, buildings, standing trees, growing crops, etc., attached to the soil, drew therefrom the general rule that 'if the contract when executed is to convey to the purchaser a mere chattel, though it may be in the interim a part of the realty, it is not affected by the statute.' (Browne on Statute of Frauds [1st ed.], sec. 249.) Benjamin, after quoting with approval the language of Lord Blackburn (from his work on Sales), lays down the rule that 'an agreement to transfer the property in anything attached to the soil at the time of the agreement, but which is to be severed from the soil and converted into goods *before* the property is trans-

ferred to the purchaser, is an agreement for the sale of goods, an executory agreement.' (1 Benjamin on Sales, sec. 133.) Williston says: 'If the contract is to sell and deliver a house, even though the house is at the time affixed to the realty, it is a contract for the sale of goods, for the parties contract to buy and sell a house separated from the realty and moved from its foundations. On the other hand, if the parties attempt to make a present transfer of a building or materials fixed in a building, it is evident that they are attempting to make a sale of realty, even though it is also agreed that the subject matter of the sale shall be severed in a short time.' (Williston on Sales, sec. 66.) The supreme judicial court of Massachusetts, speaking in a case where the contract related to growing trees, said: 'It may be difficult in many cases to determine, from the terms of the contract, whether the parties intend to grant a present estate in the trees while growing, or only a right, either definite or unlimited as to time, to enter and cut, with title to the property when it becomes a chattel. If the former be the true construction, then it comes within the statute, and must be in writing; if the latter, then, though wholly oral, it may be enforced.' (*White v. Foster*, 102 Mass. 375, 378.)" (p. 4.)

In *Maguire v. Kiesel*, 86 Conn. 453, 85 Atl. 689, the plaintiff and defendant entered into an oral agreement to share equally from the profits that should be made from the purchase and sale of land. The court said:

"The agreement was not within the operation of the statute. The statute 'contemplates only a transfer of lands, or some interest in them.' (*Bostwick v. Leach*, 3 Day, 476, 484; *Hall v. Solomon*, 61 Conn. 476, 483, 23 Alt. 876.) The subject matter of the agreement was not land or any interest therein. It was a fund of money representing profits from a joint enterprise in the nature of a partnership. . . . This enterprise, to be sure, was one which contemplated and involved a real-estate transaction, and the fund to be divided was to be derived from that source. . . . The overwhelming weight of authority in other jurisdictions is to the same effect, that an agreement for a joint enterprise in the nature of a copartnership which has for its purpose the purchase, improvement, and sale of real estate for the profit arising therefrom to be divided among the joint undertakers as among partners, and which does not undertake to operate upon the ownership of or title to the realty, or anything annexed thereto as a part or parcel of it and transferable alone by deed, is not within the statute." (pp. 457, 458.) (See *Huston v. Cox*, 103 Kan. 73, 172 Pac. 992; *Bird v. Wilcox*, 104 Kan. 799, 180 Pac. 774; *Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043.)

In *Bresee v. Robinson*, 236 Mich. 633, 211 N. W. 59, the court said:

"The oral arrangement between Bresee and Robinson was not that Robinson should have any interest in the land, but that he was to have only an interest in the avails of a sale—his advances, charges, and one-half the profits —that Bresee should account to him. This does not offend the statute cited. The matter has been considered so many times that we refrain from quoting from the decisions. (See *Carr v. Leavitt*, 54 Mich. 540 [20 N. W. 576]; *Davis*

*v. Gerber,* 69 Mich. 246 [37 N. W. 281]; *Petrie v. Torrent,* 88 Mich. 43 [49 N. W. 1076].) See, also, *Tuttle v. Bristol,* 142 Mich. 148 [105 N. W. 145], where the matter is discussed fully." ·(p. 636.)

If a contract for the sale of timber contemplates that the purchaser shall become the owner of the timber while still uncut, the agreement, if oral, is within the statute and unenforceable. If, however, the bargain is for ownership in the wood only after it has been cut, it is valid. (Restatement, Contracts, sec. 195, *b, Illustrations* 6 and 7.)

The general rule is that things attached to and forming part of the realty which are agreed to be severed therefrom before the sale or promptly after the formation of the contract are not an interest in land within the statute. Minerals, though part of the realty, may be severed, and when severed become goods. A contract to sell severed iron ore would be a contract to sell goods even though the ore which the parties expected, or even contracted, should be the subject of the sale, was not yet mined. (2 Williston on Contracts, · Rev. ed., § 518.)

We have held that a contract to execute or to transfer an oil and gas lease is a contract for the sale of an interest in land and therefore within the statute. (*Robinson v. Smalley,* 102 Kan. 842, 171 Pac. 1155; *White v. Green,* 103 Kan. 405, 173 Pac. 974; *Gates v. Syndicate Oil Corp.,* 132 Kan. 272, 295 P. 2d 649; *Derby Oil Co. v. Bell,* 134 Kan. 489, 7 P. 2d 39.)

But in *Robinson v. Smalley,* supra, it was held that an oral contract by a husband, whereby for a consideration he agreed to procure his wife to sign an oil and gas lease, was enforceable. The court said: "The contract was purely one of employment to produce a stated result, and consequently the statute of frauds has no application."

In *Dashko v. Friedman,* (Tex. Civ. App.) 59 S. W. 2d 203, the facts were similar to the case at bar. The defendant Friedman wished to acquire a certain oil and gas lease. He verbally agreed with the plaintiff Dashko, a real-estate broker, that if Dashko would procure the lease, in consideration of his services "the defendant agreed, bound and obligated himself to assign and to transfer to the plaintiff, as soon as said lease was secured, an undivided ³⁄₁₆ of ⅛ of the oil and gas produced and to be produced from said leased premises, as, if, and when produced, and in that event only, as an overriding royalty, free of cost and all expense of development and operation of said property." (p. 203.) It was later agreed that plaintiff's interest in the lease should be ²⁄₁₆ of ⅛. The trial court

sustained special exceptions to plaintiff's petition on the ground that the contract was in contravention of the statute of frauds. On appeal the judgment of the trial court was reversed. The court said:

"The question presented by this appeal for determination is whether or not the subject matter of the contract, alleged in plaintiff's petition as entered into between plaintiff and defendant, is personal property or real estate. If it was the intention of the plaintiff and defendant, as evidenced by the terms of the oral contract between them, to provide for a conveyance by the defendant to plaintiff of an interest in the mineral in place, then the contract would be within the statute of frauds. If it was their intention to stipulate for an assignment thereof, and if terms of the contract so dealt with the minerals only, after they were produced, then the contract would not be prohibited by the statute of frauds. We are of the opinion that the oral contract as alleged in plaintiff's petition whereby it is alleged that defendant agreed to transfer and assign to plaintiff '$\frac{2}{16}$ of the oil and gas produced and saved from said land, as, if, and when produced, and in that event only,' clearly evidences the intention of the parties to, and that they thereby did, contract with relation to the oil and after it should be produced and saved, and in that event only, and not as a mineral interest in the land. The fact that the oil and gas to be received by appellant under the contract is designated as an 'overriding royalty' does not make it real estate, or prohibit it from being personal property. It merely denotes its freedom from the burden of production expenses. The contract alleged between the plaintiff and defendant did not undertake to deal with the mineral in fee; but undertook to deal with it, as, if, and when (after) produced (taken out of and severed from the land), and in that event only; that is, after it became personal property, and is not within the statute of frauds (Rev. St. 1925, art. 3995). The question here presented was decided by the Commission of Appeals in *Jones v. O'Brien,* 251 S. W. 208, and the holding again approved in deciding questions certified to by the court of civil appeals of the ninth supreme judicial district in the case of *Hager v. Stakes,* 116 Tex. 453, 294 S. W. 835, 838; Judge Greenwood, speaking for the supreme court, said: '*Jones v. O'Brien,* (Tex. Com. App.) 251 S. W. 208, which was correctly followed in *O'Brien v. Jones,* (Tex. Civ. App.) 274 S. W. 242, determined nothing except that parties may contract for the sale of oil as personalty, after its severance from the soil, and that such a contract is without the statute of frauds.'

"We are of the opinion that the court erred in holding that the overriding royalty sued for by defendant constitutes an interest in real estate." (p. 204.)

The *Dashko* case was cited with approval by the circuit court of appeals, fifth circuit, in *Standley v. Graham Production Co.,* 83 F. 2d 489, wherein it was held that an assignment and transfer of an undivided $\frac{1}{4}$ of $\frac{7}{8}$ of all the first oil and as produced, saved and marketed from the leasehold estate "if, as and only when same is produced, saved and marketed therefrom" until a certain sum of money was received by the conveyee, did not create an estate in

the land, but only a lien on the oil after it had been separated from the soil.

The contention is made that the agreement to give plaintiffs 20,-000 barrels of oil out of any oil produced from the land granted to plaintiffs an overriding royalty; that an overriding royalty is an interest in the lease, and that an agreement to buy or sell an oil and gas lease or any interest therein is within the statute of frauds. In support of these contentions defendants refer to and rely upon *Sheffield v. Hogg,* 124 Tex. 290, 77 S. W. 2d 1021, 80 S. W. 2d 741; *Tennant v. Dunn,* 110 S. W. 2d 53; *Cates v. Greene,* 114 S. W. 2d 592, and other cases, in which, counsel contend, the Texas courts hold that an overriding royalty is an interest in land and cannot be alienated except by an instrument in writing. As we hold the agreement before us does not purport to assign or transfer an overriding royalty, we find it unnecessary to determine whether such royalty is real or personal property. (For the purpose of taxation an overriding royalty is classified as personal property, *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957.)

Counsel for defendants assert that the case of *Danciger Oil & Refining Co. v. Burroughs,* 75 F. 2d 855, "involves facts almost identical to those here involved, raises every point raised by this appeal, and authoritatively establishes the contentions of defendants herein."

In that case the plaintiff owned eight lots in a block of thirty-two. He entered into an oral agreement with defendants to execute leases to defendants on his eight lots, and to obtain for defendants leases from the respective owners on the remaining lots in consideration of defendants' promise to pay him $500 in cash and to convey a ⅟₁₆ overriding royalty to him. In the opinion it was said:

"Both parties approach the contract as one exclusively for services on plaintiff's part, and argue the case upon that assumption. Plaintiff relies upon *King v. Gants,* supra, and the trial court apparently predicated its decision upon that case. Defendants concede that the principle decided in that case applies here, but insist that the case was overruled by *Hall v. Haer,* supra, and urge that we must follow the last expression from the supreme court of the state. It is unnecessary to consider whether there is conflict between the two cases, and, if so, which applies here, because we do not share the view that the contract now under consideration was one exclusively for services on plaintiff's part. It overlooks an important fact. The contract consisted of two integral parts on each side. In addition to the services rendered in securing leases from other owners, plaintiff was required to execute a lease upon his own property constituting virtually one-fourth of the entire area. Under the authorities previously cited, that lease constituted a conveyance

of an interest in real estate. In addition to paying the $500 in cash, defendant Danciger Oil and Refining Company was required to convey to plaintiff an overriding royalty. That constituted a conveyance of an interest in land because it is the general rule that an assignment of an overriding royalty carries an interest in the real estate. (*United States v. Noble*, 237 U. S. 74, 35 S. Ct. 532, 59 L. Ed. 844; *Homestake Exploration Corp. v. Schoregge*, 81 Mont. 604, 264 P. 388; *Sunburst Oil & Refining Co. v. Callender*, 84 Mont. 178, 274 P. 834; *Robichaux v. Bordages*, [Tex. Civ. App.] 48 S. W. 2d 698; *Emerson v. Little Six Oil Co.* [C. C. A.] 3 F. 2d 265; Mills-Willingham, Law of Oil-Gas, sec. 128.) These two constituent elements on each side of the contract were inseparable. Manifestly, neither party would have entered into the agreement without both being required of the other. We, therefore, have a case in which the parties agreed, among other things, to an exchange of interest in land, and the contract has been fully performed on plaintiff's part. Can a court of equity compel specific performance in that situation?" (p. 857.)

As the agreement was for an exchange of interest in land it came within the ban of the statute.

In the case at bar the plaintiff was employed to bring about the sale to defendants of an undivided 9/16 interest in an oil and gas lease—as compensation the plaintiff was to receive 20,000 "barrels of oil out of any oil produced from said land." In the Danciger case the plaintiff not only agreed to give a lease on his land, but the defendants agreed to convey an interest in the lease to the plaintiff. It was these provisions that the court stressed in holding the brokers' agreement was not one exclusively for services.

Under the authorities above cited an oral contract for the sale of a present interest in stone, coal, iron or other mineral in the ground, or for uncut timber, is a contract for the sale of an interest in the land within the statute and unenforceable. But under the common law there may be a constructive severance of such material, and an executory agreement for the sale thereof as goods or personal property when severed. The agreement sued on was not for a present interest in oil in the ground, or for the transfer of an interest in an oil and gas lease.

The subject matter of the action was to recover compensation for services performed. A part of his compensation was a certain number of barrels of oil when produced from the land. We think the agreement was one relating to personal property, and therefore enforceable.

The judgment is affirmed.