DELOS M. STEVER v. JOHN TORRENT AND ALBERT H.
PETRIE.

[See 88 Mich. 43.]

*Contract—Specific performance.*

Complainant filed a bill to enforce the specific performance of a
verbal agreement for the sale to him by the defendant Tor-
rent of a tract of pine land. And it is held that the evidence
fails to show that the parties ever had an understanding that
should be dignified by the name of "contract," and that the
complainant has no ground for equitable relief.

Appeal from Muskegon. (Dickerman, J.) Argued Jan-
uary 22, 1894. Decided February 12, 1894.

Bill to compel the specific performance of a land con-
tract, and for an accounting. Complainant appeals. De-
cree affirmed. The facts are stated in the opinion.

*Sessions & Bassett* (*FitzGerald & Barry* and *Francis A.
Stace*, of counsel), for complainant.

*Smith, Nims, Hoyt & Erwin* (*Uhl & Crane*, of counsel),
for defendant Torrent.

*Bunker & Carpenter* (*Kingsley & Kleinhans*, of counsel),
for defendant Petrie.

HOOKER, J. Defendants, Torrent and Petrie, became
interested in a land deal, wherein the former, upon infor-
mation furnished by the latter, purchased, for $769,000,
certain tracts of pine timber, under an arrangement that
Petrie was to have a share of the profits. Effect was given
to this arrangement in a suit between them, reported in
88 Mich. 43. All of the tracts were sold, except one,
called the "Kalkaska Tract," leaving the profits—to a

portion of which Petrie was entitled—to be made from the
disposition of this parcel. A contract was made between
Torrent and a concern called the Smith Lumber Company
to lumber said tract and saw the logs upon joint account,
which that company was engaged in doing during the
pendency of said suit, and still continues.

After the decision of this Court in 88 Mich., Stever,
whose deceased wife was Torrent's daughter, commenced
this suit against Torrent, making Petrie a party. It is, in
substance, a claim that Torrent made an oral agreement with
him to sell to him the Kalkaska tract for $200,000, without
interest, and to take his pay from the earnings of the
contract with the Smith Lumber Company, which earnings
he was then receiving. As leading up to this arrangement,
the bill stated—and testimony was introduced tending to
show—that Stever sold out his business, which was that of
a jeweler, at Torrent's suggestion that it was a "penny
business," and that he would aid him in getting into the lum-
ber business; that it was substantially arranged between Tor-
rent and himself that he was to purchase another tract,
including the Traverse City mills, for $250,000, without
interest, and that Torrent was to lend him sufficient money
to carry on business with; but that this arrangement was
not carried out because Torrent got a chance to sell that
property advantageously, and the arrangement was made, as
stated, for the Kalkaska tract. Stever claims that he did
not know that Petrie had any interest in these lands, but
that Petrie knew of the deal between him and Torrent;
that for a time he (Stever) was at Kalkaska, attending to
this business, but his wife became sick, and required his
attention, and finally died, and he became crippled through
an accident, and afterwards, at Torrent's suggestion, man-
aged a store which Torrent obtained upon a mortgage,
and sold him an interest in, so that his attention to his
alleged Kalkaska interests was confined to a comparatively

short time.   It was claimed on his behalf that he was
entitled to a performance of his contract by Torrent, and
he asks an accounting as to the profits received from
the Smith Lumber Company contract.

A large amount of testimony was taken, a considerable
portion of which is the most patent hearsay; and, while
Stever and Torrent both testify to talk about the Kalkaska
tract, there is, to our minds, an absence of that satisfac-
tory proof which should be required to establish complain-
ant's right to the relief sought.   It is unnecessary to ana-
lyze the testimony of the several witnesses, and perhaps is
sufficient to say that it convinces us that Stever was not
as successful, in a business way, as his father-in-law, Tor-
rent, desired, and that Torrent was willing to give him a
chance to get into the lumber business, and substantial
aid, if he showed ability to manage such business.   We
cannot, however, believe that he offered to sell him the
Grand Traverse land and mills on credit, and to furnish
him with money to run the business, or that the parties
ever deliberately contracted that Stever should have the
Kalkaska tract, as alleged.   A large share of the profits of
the Torrent purchase was locked up in that tract, and we
are not convinced that Torrent deliberately surrendered it.
He did send Stever to Kalkaska to keep track of the
shipments of lumber under the Smith Lumber Company
contract, and encouraged and aided him in purchasing and
lumbering with another person some small tracts in the
vicinity, furnishing him money, and paying for the saw-
ing of timber from such parcels.   Evidently, he did not
give promise of great success as a lumberman; and, with
the death of his wife, perhaps Torrent's interest in him
lessened.   At all events, his visits to Kalkaska ceased, and
Torrent had him take charge of the store, selling him a
half interest for vastly more than its value, if Stever is to
be believed, and in turn being run in debt by Stever, con-

trary to his express agreement, to the amount of ten to twenty thousand dollars, which Torrent had to pay. He also became, personally, Torrent's debtor, to a large amount. The proof regarding Petrie's knowledge of the alleged contract is equally unsatisfactory, and is emphatically denied. The evidence very satisfactorily shows that Stever has received large compensation for all that he ever did for Torrent, and that the latter, while at one time disposed to aid him, by reason of the then subsisting relation, refused to make a valid contract, as shown by the testimony of both, and kept matters in his own hands. We think these parties never had an understanding that should be dignified by the name of "contract," and that complainant has no ground for equitable relief.

The decree of the circuit court will be affirmed, with costs.

The other Justices concurred.