B. H. CORNELIUS V. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY.

No. 14,697.   (87 Pac. 751.)

SYLLABUS BY THE COURT.

| 74 | 599 |
| f74 | 550 |
| 74 | 599 |
| 75 | 297 |
| 75 | 442 |
| 74 | 599 |
| 78 | 96 |

1. RAILROADS—*Shipment of Live Stock—Damages—Negligence.*
Where the plaintiff asks damages from a railroad company
for negligence in carrying and delivering cattle shipped over
its line, alleging that it had orally agreed to carry and de-
liver the cattle upon certain conditions, and the railroad
company admits the receipt and shipment of the cattle, but al-
leges that they were carried under a written contract the con-
ditions of which had not been complied with by plaintiff, and
proof is offered on the one part that the contract of shipment
was oral and upon the other that it was written, and tends
to show actionable negligence under either theory, *held*, that
the plaintiff can recover the damages sustained as measured
by the agreement established by the evidence.

2. ——— *Notice of Claim for Damages—Loss of Market.* A
provision in a live-stock shipping contract that notice in
writing of the shipper's claim for damages shall be a condi-
tion precedent to a recovery for any loss or injury to stock
during transportation does not cover damages such as the
loss of market or other losses occasioned by the carrier's
negligent delay and arising after transportation has ended.

3. CONTRACTS—*Evidence—Intention.* In a controversy as to the
making of an agreement one of the parties to it may not
testify as to what he had in mind in the preliminary nego-
tiations, nor state his unexpressed intent in such negotiations.

Error from Butler district court; GRANVILLE P. AIK-
MAN, judge.   Opinion filed November 10, 1906.   Re-
versed.

*N. A. Yeager,* and *T. A. Kramer,* for plaintiff in
error.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:   B. H. Cornelius brought an action
against the Atchison, Topeka & Santa Fe Railway Com-

pany to recover damages alleged to have been sustained by the failure of the company to deliver cattle shipped over its line from Augusta, Kan., to Chicago, Ill., in accordance with the agreement of the parties and its duty in the premises. It was alleged that on September 5, 1903, twelve car-loads of fat export cattle were shipped from Augusta to Chicago over the defendant's line, upon an oral contract that they were to be delivered at Chicago on the morning of the 7th of September, 1903, in time for the market of that day, but that the cattle were negligently and unskilfully handled and delayed at various stations on the line and failed to reach Chicago until the afternoon of September 7, and after the market of that day had been closed. The loss sustained by reason of the negligent delay was a decline in the market subsequent to the morning of the day when the cattle should have been delivered, shrinkage of the cattle while being kept until they could be marketed on September 9, and cost of keeping them during that time. It was alleged that some of the cars were negligently billed and delivered to the wrong parties by the company, by which an additional loss resulted.

The railway company in its answer admitted the receipt and transportation of the cattle over its line, but averred that they were shipped under a written contract which contained the following provision:

"That the live stock covered by this contract is not to be transported within any specific time, nor delivered at destination at any particular hour, nor in season for any particular market."

In respect to loss or claims for damage by shippers, the contract contained the following stipulation:

"As a condition precedent to his right to recover any damages for any loss or injury to his said stock during the transportation thereof, or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, or previous to loading. thereof for shipment, the shipper or his agent in charge of the stock will give notice in writing of his claim

Cornelius v. Railway Co.

therefor to some officer of said company, or to the nearest station agent, or if delivered to consignee at a point beyond the company's road, to the nearest station agent of the last carrier making such delivery, before such stock shall have been removed from the place of destination above mentioned, or from the place of delivery of the same to the consignee, and before said stock shall have been slaughtered or intermingled with other stock, and will not move such stock from said station or stockyards until the expiration of three hours after the giving of such notice; and a failure to comply in every respect with the terms of this clause shall be a complete bar to any recovery of any and all such damages."

It was alleged by the defendant that no notice of loss was given to the company, as required by the quoted provision. Aside from a general denial the answer contained a specific denial that any oral contract was made of that defendant's agent had any authority to make one.

Plaintiff replied admitting the signing of the written contract, but alleged that it was signed after the cattle had been placed in charge of the railway company, when the train was about to start, and there was no opportunity to read the contract. He also alleged that he was coerced into signing it by the declaration of the agent that the cattle would not be permitted to go on the train unless the papers then presented were signed.

It appears that Cornelius had negotiated with the local agent of the company in regard to obtaining a special train to start from Augusta on Saturday and to arrive with the cattle at Chicago early Monday morning, but the agent declined to promise such a train without consulting his superior officers at headquarters. He agreed to write to Topeka and ascertain whether such a train could be had, and in a few days reported to Cornelius that he had heard from Topeka and that the train requested would be furnished. It appears, too, that the cattle were export cattle, for which there was a market on Mondays but none on the

following day, and that cattle not sold on Monday were necessarily kept over until the Wednesday market; and this was the reason given by Cornelius to the company for prompt shipment. There was considerable delay in the transportation of the cattle, and as a result they did not arrive in Chicago for Monday's market. There was a decline in the market and a corresponding loss to the owner of the cattle, and in addition the expense of holding the cattle until the sale could be effected. Testimony was offered in behalf of the defendant tending to show that no oral contract was made, but that the cattle were shipped under a certain written contract, which was produced in evidence. The trial court submitted to the jury the question whether the cattle were shipped under the oral contract alleged by the plaintiff or under the written one set out by the defendant, and the jury found generally in favor of the railway company.

Complaint is made of the instructions of the court, and of rulings upon testimony. In its charge to the jury the court instructed that if the plaintiff sustained his averment that the cattle were shipped under the oral contract he could recover for the loss resulting from the negligence of the company without regard to whether any notice was given to the company by the plaintiff of his claim for damages. The court then said to the jury:

"You are instructed that if the plaintiff in this case fails to prove by a preponderance of the evidence an oral contract between him and the defendant in substance such as is alleged in his petition, then, in that case, the plaintiff cannot recover in this action, and your verdict must be for the defendant. . . . You are instructed that if you find from the evidence that the written contract in evidence was signed by plaintiff, or his agent, after the oral contract claimed by plaintiff was made, that said written contract became thereby the only contract between the parties, and said oral contract claimed by plaintiff, if any such existed, became merged in said written contract, and plaintiff cannot recover in this action, unless you also find from

the evidence that the signature of plaintiff, and his agents, was obtained to said written contract by fraud or coercion."

The peremptory direction to find for the defendant if it was found that the written contract was the controlling one cannot be upheld. Obviously it was based on the failure of the plaintiff to give written notice of his claim for damages within the time specified in the written contract. The plaintiff could not be denied a recovery because it was found that the damages must be measured by the written contract rather than a prior oral one. While the plaintiff alleged an oral contract, the pleadings of the parties when construed together were sufficient to warrant a recovery under whatever contract was found to have been actually made. The gist of the action was the negligence and wrong-doing of the defendant, resulting in injury to the plaintiff. The agreement of the parties is important in fixing the duties and liabilities of the railway company, but as the defendant admitted receiving and shipping the cattle, and itself pleaded the terms of the contract under which the shipment was made, it cannot urge that a recovery cannot be had for its negligence when measured by the agreement actually made, whether it was written or oral.

It may, and did, urge that the written contract was the binding one, and that under it the plaintiff is barred from recovering damages because he failed to comply with reasonable requirements included in that contract. The first stipulation relied on as precluding a recovery is that the cattle were not to be delivered within any specific time, at any particular hour, nor in season for any particular market. While under this provision the arrival of the cattle is not required at any fixed time, nor for any particular market, the company did not, and in fact could not, contract against its own ordinary negligence. While limitations upon its common-law liability are permitted, it is still required to

transport the cattle with due diligence and care, and it must still be liable for losses resulting from its ordinary negligence.

There was a limitation in the written contract which precluded a recovery for loss or injury to the cattle during transportation unless the shipper, or his agent in charge of the cattle, gave notice in writing of the claim to some officer or agent of the company before they were removed from the destination or place of delivery, or had been slaughtered or intermingled with other stock. This limitation has been considered and sustained. (*Goggin v. K. P. Rly. Co.*, 12 Kan. 416; *Sprague v. Mo. Pac. Rly. Co.*, 34 Kan. 347, 8 Pac. 465; *W. & W. Rly. Co. v. Koch*, 47 Kan. 753, 28 Pac. 1013; *Kalina v. Railroad Co.*, 69 Kan. 172, 76 Pac. 438.) The provision, however, only covers loss or injury to the cattle during the transportation, and manifestly would cover any shrinkage of the cattle during transportation. It does not cover the loss of market, or injury arising from depreciation in the market. In *Railway Co. v. Poole*, 73 Kan. 466, 87 Pac. 465, the provision in question was interpreted, and it was held that it did not fairly cover the loss of a market. It was said:

"Here the claim specified in the contract of which notice is to be given is confined to loss or injury to stock during transportation, and the notice was required to be given before the removal of the cattle from the place of the delivery or destination, and before they were slaughtered or intermingled with other stock. A loss of market differs distinctly from a loss or injury to the cattle. Depreciation in the price or the loss of a market is not fairly embraced within the terms of the contract requiring notice of loss or injury to the cattle during transportation." (Page 468. See, also, *Kramer & Co. v. C. M. & St. P. Ry. Co.*, 101 Iowa, 178, 70 N. W. 119.)

The case of *Kalina v. Railroad Co.*, 69 Kan. 172, 76 Pac. 438, is cited as an authority that the lack of notice bars a recovery of damages, but the contract involved

in that case made the claiming of damages within a fixed time a condition precedent to a recovery of any and all kinds of damage.

The case of *Railway Co. v. Means,* 71 Kan. 845, 80 Pac. 604, is also cited for the proposition that the giving of notice is essential to a recovery. That case followed the Kalina case in deciding that notice of the claim of damages was a condition precedent to a recovery, but no attention was given to the particular question involved here. It is said that the contract in that case was similar to the one in question here, and that some of the damages claimed belonged in the same class with those involved in this case. However that may have been, it is manifest that the distinction between loss and injury to the cattle during transportation and loss of a market or losses arising after delivery and resulting from the negligence of the railway company was not considered or determined. The Means case cannot therefore be regarded as an authority that loss or injury to the cattle during transportation is identical with loss of a market or other losses arising after transportation has ended.

If it turns out that the written contract is binding upon the plaintiff, he would still be entitled to recover damages other than for losses or injury during the transportation which were the result of the defendant's negligence. The peremptory direction of the court cutting out any recovery under the written contract was therefore error. Testimony was offered tending to show losses for which a recovery may be had without giving the notice specified in the contract, and the jury should have been permitted to determine what, if any, damages should have been awarded.

Proof was offered by the plaintiff tending to show that the shipment was made under an oral contract. When Nevins, the station agent of the company, testified he was asked if in the conversations he had had with plaintiff in regard to shipping the cattle he had

ever had in mind or undersood that he was making an oral contract, and, over objections, he stated that he had not. To allow him to give his unexpressed intent was manifest error, and the importance of the error was increased by an instruction to the effect that before plaintiff could recover on the oral contract the minds of the agent of the company and of the plaintiff must have met and agreed on the terms and conditions.

There is complaint of the sixth instruction, and as printed in the record it appears to be ambiguous and faulty, but that defect can be corrected and cleared up in a future trial.

For the errors pointed out the judgment is reversed, and the cause remanded for a new trial.

All the Justices concurring.