## ST. LOUIS & S. F. R. CO. v. WILSON.

No. 1675.    Opinion Filed May 14, 1912.

(124 Pac. 326.)

1.    TRIAL—Taking Case or Question from Jury—Sufficiency of Evidence.    Where there is an issue as to the existence of certain facts and evidence affirming and denying their existence, it is error for the court to instruct the jury that the evidence tends to prove such facts.

2.    NEW TRIAL—Instructions—Province of Court and Jury.    A division of function between court and jury is essential to the safe administration of justice, and a new trial will always be granted where the judge interferes with the lawful province of the jury to the prejudice of the party complaining.    Heithecker v. Fitzhugh, 41 Kan. 50, 20 Pac. 465.

(Syllabus by Harrison, C.)

*Error from Okmulgee County Court;
M. M. Alexander, Judge.*

Action by George W. Wilson against the St. Louis & San Francisco Railroad Company.    Judgment for plaintiff, and defendant brings error.    Reversed and remanded.

This action was commenced by Geo. W. Wilson against the defendant railroad company in the county court of Okmulgee county September 16, 1908; the plaintiff alleging that on June 8th he delivered to defendant at Morris, Okla., for shipment to Kansas City, Mo., 106 head of beef cattle.    The said cattle were loaded into the cars of defendant company on the afternoon of June 8th and were started on the road at about 6 o'clock p. m. of said day.    That they arrived in Kansas City about 10:30 a. m., June 10th, having been about 40 hours on the road, when with reasonable diligence on the part of defendant they should have arrived in Kansas City within about sixteen hours from the time they were started from Morris, Okla.    That at the time they landed in Kansas City there was no market for cattle owing to the stockyards being overflowed with high water and the business of the stockyards suspended.    That plaintiff was thereby

compelled to ship his cattle from Kansas City to St. Louis, Mo., for market at an additional expense. That the market had declined between the dates on which the cattle should have reached Kansas City and the date they were sold, which decline in market resulted in loss to plaintiff of 60 cents per 100 pounds. That plaintiff was damaged by reason of such decline in market in the sum of $605.52; that he was damaged by reason of the depreciation or shrinkage in weight of the cattle in the sum of $278.25; and in the extra expense incurred in freight from Kansas City to St. Louis in the sum of $140.26; plaintiff alleging that all of such loss and damage was caused by the negligence of defendant company in the delay of shipment. Wherefore judgment was asked for the sum of $1,024.03.

Defendant answered denying the allegations in the petition, and as further defense alleged that such shipment was made under two written contracts entered into and signed by plaintiff and defendant before such shipment was received by defendant. That such contracts provided, among other things, that the live stock in question was not to be transported within any specified time, nor delivered at any particular hour, nor in season for any particular market. That neither the defendant company nor any connecting carrier should be held responsible for any delay caused by storm, failure of machinery or cars, or from obstruction of track from any cause, or any injury caused by fire from any cause whatever. That such contracts further provided that no agent of the defendant company had authority to waive, modify, or amend any of the provisions of said contract, or to agree to ship said cars by any particular train, or to reach any particular market, or to furnish any particular kind of cars, or to furnish cars on any particular day, which the carrier expressly declined to do.

The defendant for further defense alleged that while said shipment was in transit there occurred a very severe and unusual flood at Kansas City which rendered it impossible for defendant to move its cars up to the stockyards at Kansas City on June 10th. That defendant endeavored by diligence and care to deliver said

cattle at their destination within reasonable time, but was prevented from so doing by reason of the floods and high water aforesaid.

The case was tried May, 1909, resulting in a verdict in favor of plaintiff in the sum of $500. On May 25th motion for new trial was overruled and judgment rendered upon said verdict, from which defendant, plaintiff in error here, appeals, urging the following assignments of error: First, error of the court in giving to the jury instruction No. 5; second, that the verdict is not sustained by sufficient evidence and is contrary to law; third, error of the court in overruling defendant's motion for a new trial.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*Belford & Hiatt,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). As to the first assignment, inasmuch as the error complained of in instruction No. 5 was presented in the motion for a new trial, we will consider the first and third assignments together, inasmuch as they both go to what seems to us to be the decisive question involved; namely, the error in instruction No. 5. Said instruction reads as follows:

"The court instructs you that where the plaintiff asks damages from a railroad company for negligence in carrying and delivering cattle shipped over its line, alleging that it had orally agreed to carry and deliver the cattle on certain conditions, and the railroad company admits the receipt and shipment of the cattle, but alleging that they were carried under a written contract, the conditions of which had not been complied with by plaintiff, and proof is offered on the one hand that the contract of shipment was oral, and upon the other that it was written, and which tended to show actionable negligence under either theory, the plaintiff can recover damages sustained as measured by the agreement established by the evidence."

This instruction, we think, was clearly an invasion of the jury's province to determine from the evidence whether the ship-

ment in question was under an oral or a written contract, and to determine from the evidence and all the circumstances whether there had been negligence on the part of the plaintiff under whichever contract they found from the evidence the shipment was made. There was an issue raised by the pleadings as to whether the shipment was under an oral or a written contract. It was for the jury to determine from the evidence under which contract the shipment was made, and, having determined same, it was within their province to determine from the evidence and from all the circumstances whether there had been negligence on the part of defendant. Having done this, should they have found that defendant was guilty of negligence, it was then within their scope of authority to determine from the evidence the amount of damages to which plaintiff was entitled.

This instruction has a tendency to show to the jury what the court thought about the evidence—a thing which courts should carefully avoid. There was an issue as to facts which would constitute negligence. Whether there was negligence could be determined only from the evidence, and for the court to say the evidence tends to show actionable negligence under either theory we cannot say how far the jury was influenced by such language. The evidence was all in at that time. The court evidently based this statement upon the weight of the evidence; drew such conclusion from all the evidence. Such language impresses us with the belief that the court thought negligence had been proven. The jury may have had the same impression. They would have been justified in drawing such inference. They might have reached a different conclusion had the court not used this language. Had the court said, "The evidence does *not* tend to show negligence under *either* theory," the effect would readily be seen. Yet the principle is the same. The court is not authorized to say the evidence does or does not prove the fact in issue, and, when it does say either, the jury will invariably follow such suggestion.

As was said by the court in *Heithecker v. Fitzhugh*, 41 Kan. 50, 20 Pac. 465:

"In trials by jury, courts ought to be very careful not to impose an opinion as to the facts in dispute, for it is well recognized that juries have great respect for the opinions of the trial courts, and, where such opinions are clearly expressed, a jury rarely if ever returns a verdict in opposition to such expressed opinion."

The syllabus in this case is as follows:

·"A division of function between the court and jury is essential to the safe administration of justice, and a new trial will always be granted where the judge interferes with the lawful province of the jury to the prejudice of the party complaining."

In *Davis v. Gerber*, 69 Mich. 246, 37 N. W. 281, the court says:

"The court may always tell the jury, when he shall deem it proper or necessary, for what purpose certain testimony was received, but it is not proper 'for the court to say to them, after the evidence is in, what that testimony tends to show or prove unqualifiedly, or without submitting to them in the same the question of its credibility. Whether the testimony does or does not tend to prove any particular fact depends entirely whether the jury believes the testimony, and its credibility is for the jury always and not for the court; and, so far as the foregoing charges pass upon the credibility of the testimony, they are erroneous."

This doctrine is too old and well settled and sound to need any citation of authorities. But counsel for defendant in error seek to justify the instruction in question on the ground that it was taken verbatim from the syllabus of *Cornelius v. A., T. & S. F. Ry. Co.*, 74 Kan. 599, 87 Pac. 751. From reading this case we find it true that the language of the syllabus is the same as the language of the instruction in the case at bar. In fact, the two cases are very similar in every respect. Practically the same issues are involved.

But the legal proposition announced in the syllabus of the Cornelius case is one deduced from a given state of facts; it is based upon a condition of facts assumed to exist or to have already been found to exist, and, while we concede it to be correct as an abstract proposition of law, yet when this language is addressed to a jury to be applied to a state of facts yet to be found—facts yet to be determined by the jury from the evidence

which it has heard—it is readily seen how easily the jury might be led to believe from such language that the court thought the evidence sufficient to establish such fact.    This is wherein the error in the instruction consists.    Such language is liable to impress the jury .with the estimate which the court places upon the credibility of the witnesses.    It is to this extent an invasion of the jury's exclusive province to determine the credibility of the witnesses and the weight to be given their testimony.

It is further contended by defendant in error that the language of this instruction is modified by, and the probable harmful effect removed by, other paragraphs of the court's charge.    But from a study of the entire charge, we fail to find this contention supported.

It is our opinion that the judgment should be reversed, and the cause remanded.

By the Court:   It is so ordered.