## TUBBS v. SHEARS.

No. 6391.   Opinion Filed February 15, 1916.

(155 Pac. 549.)

1.  **ANIMALS—Vicious Dog—Lability of Owner.**   The law recognizes a right in the owner of a vicious dog to keep it for the necessary protection of life and property, but one exercising this right does so at his own risk, and is held strictly accountable for any harm resulting to another.

2.  **SAME—Notice of Vicious Disposition.**   While the owner of a dog is not liable, in the absence of statutory provision, for any injury it may inflict upon another, unless he has notice of its inclination to commit such injury, the modern and more reasonable doctrine is that he need not have actual notice thereof in order to make him liable.

3.  **SAME.**   Such notice may be either actual or constructive. Knowledge of one attack by a dog is sufficient to charge the owner with liability for all its subsequent acts.

4.  **SAME.**   Negligence, in the ordinary sense, is not the ground for liability in an action for damages by a ferocious dog, but the keeping of the dog, with either actual or constructive knowledge of its vicious disposition, fixes liability for injuries which it may inflict.

(Syllabus by Galbraith, C.)

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by James H. Shears against U. S. Tubbs. Judgment for plaintiff, and defendant brings error. Affirmed.

*Williams & Luttrell,* for plaintiff in error.

*J. B. Dudley, N. E. Sharp,* and *H. E. Cunningham,* for defendant in error.

Opinion by GALBRAITH, C.   This action was commenced by James H. Shears against U. S. Tubbs, to recover damages for personal injuries charged to have been

sustained by the plaintiff on the 9th day of April, 1912, on account of being bitten by the defendant's dog. The petition alleged that the defendant, Tubbs, was the owner and keeper of a vicious dog that was accustomed to attack and bite mankind, and that he carelessly and willfully permitted this dog to run at large in the streets of the city of Norman a considerable portion of the time, with knowledge of the vicious and savage disposition and habit of the dog; that on the 9th day of April, 1912, on the public streets of the city of Norman, this dog attacked the plaintiff and bit him, and that the dog, at that time, was affected with rabies or hydrophobia, and that this fact was well known to the defendant; that the plaintiff, by reason of the bite of the dog, suffered great bodily pain and mental anguish, and on the advice of his physician traveled to Oklahoma City and took the Pasteur treatment to prevent rabies or hydrophobia, and incurred an expense of $2 railroad fare, $33 for lodging, and $50 for physician fees, and $5 additional for his physician at Norman, making a total of $90; and that he suffered great pain in body and mind, and was thereby damaged in the sum of $1,000. The answer of the defendant admitted the ownership of the dog, but denied that he was of a ferocious and savage disposition, and accustomed to attack and bite mankind, and alleged that if the dog had such disposition, the defendant had no knowledge of it, and that the dog was of kind and peaceful disposition, and of a good character. Defendant also denied that he permitted the dog to run at large on the public streets of the city of Norman, and alleged that if the dog did appear on the public streets at any time, it was without the knowledge of the defendant. It is also denied that the dog was affected with rabies or hydrophobia, or any

other disease, so far as the defendant had knowledge thereof, and it is denied that the plaintiff was damaged as he claimed. It is further alleged:

"Defendant, further answering, alleges that on the 9th day of April, 1912, the date of plaintiff's alleged injury, plaintiff wantonly and maliciously attacked and kicked said dog; and that by reason of said assault upon said dog, the said dog snapped the plaintiff; and, if the said plaintiff sustained any injury it was because of his willful and wanton attack on said dog, and by reason thereof plaintiff is not entitled to recover in this action."

Upon the issues thus formed the cause was submitted to the court and jury for trial, and a verdict rendered for the plaintiff, assessing his damages at $190, as follows:

"Hospital fees $50, board and lodging $33, railroad fare $2, physician's fee $5, and damages $100."

From the judgment rendered upon this verdict an appeal has been prosecuted to this court.

Errors are assigned: First, in the admission of incompetent evidence; second, in the court's instructions to the jury; third, in the refusal of the court to give defendant's instruction No. 3; fourth, that the verdict of the jury is not sustained by sufficient evidence; fifth, error in denying motion for a new trial.

It will be observed that under the issues raised by the pleadings the plaintiff's claim for damages was based upon two grounds: First, that he was bitten by a vicious dog; second, that this dog was a mad dog, and that defendant owned and harbored the dog with knowledge of his vicious character, and of his affliction.

During the trial evidence was admitted on behalf of the plaintiff, over the objection of the defendant: First,

of a conversation of the witness with the defendant in October, 1911, which tended to charge him with knowledge that his dog was afflicted with rabies; and, again, the expert who made the examination of the brain of a dog which it was contended was the defendant's dog, and the one that injured the plaintiff, was permitted to testify as to the examination of the brain of a dog, and that this dog had been afflicted with rabies or hydrophobia. It is contended on behalf of the plaintiff in error that it was error to admit the evidence of the conversation, inasmuch as it occurred several months prior to April, 1912, and that if the dog was afflicted, as contended, in October, 1911, it would not be proof that he was so afflicted in April, 1912. And, again, it is contended that the testimony of the doctor, who made the examination of the dog's brain, was incompetent for the reason that the brain of the dog which was examined by the doctor was not sufficiently identified as that of the brain of the defendant's dog. Evidence was introduced to the effect that immediately after the dog bit the plaintiff it was killed, and that soon thereafter its body was hauled to the office of the doctor, and there the head was severed from the body, and the head was taken into the doctor's office, and that the doctor found the dog's head in his office when he returned, and made the analysis of the brain and found that it "was positive for rabies." The doctor testified that he only examined one dog's head on that day. It is contended on behalf of the defendant that the identity of the dog's head examined by the doctor was not sufficient to show that it was the head of the defendant's dog, and therefore the testimony was incompetent, and its admission prejudicial error, inasmuch as one of the controverted issues in the case was whether or not the

defendant's dog was affected with rabies. It seems to us that the testimony of the witness as to the conversation with the defendant relative to his dog "acting queer" was relevant and competent to go to the jury on the question of the defendant's knowledge of the affliction of his dog, and the time between the conversation and the plaintiff's injury was not so remote as to render the testimony incompetent on that ground. It likewise appears that the testimony of the doctor as to the result of his examination of the dog's brain was competent and relevant. It is true that the evidence to this point might have been more explicit, but it was sufficient to justify the conclusion that the dog's head examined by the doctor was the head of the dog that bit the complainant. The jury evidently had no doubt that the head examined by the doctor, about which he testified, was the head of the defendant's dog. We are impelled to the conclusion that the admission of this testimony was not prejudicial error.

Again, it is complained that the court erred in instruction No. 10, which reads as follows:

"You are instructed that if the defendant was the owner of and kept the dog in controversy and had knowledge brought to him that said dog had bitten, or attempted to bite one or more persons prior to the attack upon the plaintiff, then that the defendant had knowledge of the dangerous character of the dog."

This instruction may be too brief a statement of the facts that are usually considered sufficient to charge the owner of a dog with knowledge of its vicious character. The rule is stated as follows:

"While the owner of a dog is not liable, in the absence of statutory provision, for any injury it may inflict on others, unless he has notice of its inclination to com-

mit such an injury, the modern and more reasonable doctrine is that he need not have had actual notice thereof to make him chargeable. According to this doctrine notice that the disposition of the animal is such that it would .be likely to commit an injury similar to the one complained of is sufficient; but knowledge that a dog is ferociously disposed toward cattle is ordinarily not notice that it will attack persons. Knowledge of one attack by a dog is generally held sufficient to charge the owner with all its subsequent acts, but there need be no notice of injury actually committed, and therefore it is unnecessary to prove that a dog had ever before bitten any person, if the owner had seen or heard enough to convince a man of ordinary prudence of the animal's inclination to commit injuries of· the class complained of." (1 R. C. L. par. 60.)

It is said in the brief of the plaintiff in error:

"It .was admitted that the defendant knew that the dog in controversy had bitten the witness Hunt prior to the alleged injury of the plaintiff, but it was a disputed question as to whether the dog was justified in its attack upon the said Hunt; and it was further contended by the defendant that the circumstances surrounding the biting of the witness Hunt by defendant's dog were not suffi-, cient, even though known to the defendant, to put a prudent man on his guard. Under the instruction the question of the dog's right to bite the witness Hunt was taken away from the jury, as was also the question whether the circumstances of the dog's biting the witness Hunt, admitted to be known by the defendant, was sufficient to put a prudent man on his guard as to the vicious character of the dog."

Under the law it was not a question for the jury to determine as to whether the dog was justified in biting Hunt, since self-defense is not justification for a dog bite, but the fact that the defendant knew that this dog had bitten Hunt was sufficient to charge him with notice of

the vicious character of the dog, and to render him liable to any one suffering harm on account of the dog. The rule is announced as follows:

"The law clearly recognizes a right in the owner of a vicious dog to keep it for the necessary protection of life and property. But as such a creature is inherently dangerous, one assuming to exercise the right to keep it does so at his own risk, and is held strictly liable for any harm resulting to another." (1 R. C. L. par. 59.)

Complaint is also made of instruction No. 11, given by the court to the jury, wherein the jury were advised that if they found that the defendant kept the dog tied, or otherwise confined, they might infer from such fact that the defendant had knowledge of the dangerous character of the dog. This instruction may be open to the criticism urged against it that it invades the province of the jury and directs them as to the weight of the evidence, and is faulty under the doctrine of the case of *St. Louis, etc., R. Co. v. Wilson,* 32 Okla. 752, 124 Pac. 326, but still this instruction, in the light of the verdict and the evidence, cannot be said to be prejudicial error, and under section 6005, Rev. Laws 1910, is not ground for a reversal of the judgment.

The plaintiff in error also complain of the refusal of the court to give requested instruction No. 3, which reads as follows:

"You are further instructed that if defendant restrained his dog and tied it up and that by accident it got loose without the knowledge or consent of defendant, then in that case, defendant has been guilty of no negligence, and plaintiff cannot recover."

The refusal to give this instruction was not prejudicial error, for the reason that the same is not a correct statement of the law.

"As negligence, in the ordinary sense, is not the ground for liability in an action for injuries occasioned by a ferocious dog, so contributory negligence, in its ordinary meaning, is not a defense. Therefore these terms, when employed in this class of actions, may be deemed to be used, not in a strictly legal sense, but for convenience. This slight negligence, or the want of ordinary care, as the unintentional treading on the toes of a vicious dog, will not relieve its owner from injuries occasioned thereby; and, even where warnings to beware of the dog are posted about the owner's premises, it seems that he will not be exempted from liability to one who is rightfully there, or to one who is unable to read." (1 R. C. L. par. 65.)

It is said by this court in *Ayers v. Macoughtry,* 29 Okla. 409, 117 Pac. 1088, 37 L. R. A. (N. S.) 865:

"It is the keeping of the animal, with knowledge, either actual or constructive, of its dangerous or vicious propensities, which creates the liability.  *  *  *  Nor is it necessary that the dog's disposition or peculiarity be such as to render it liable to or inclined to bite all with whom it comes in contact; it being held in a number of cases that, if the dog had bitten one person prior to the injuries sued for, knowledge thereof is sufficient notice of his character to bind the owner.  *  *  *  In the old case of *Smith v. Pelah* (2 Str. 1264), *supra,* which has never been departed from, Lee, C. J., 'ruled that if a dog has once bit a man, and the owner having notice thereof keeps the dog, and lets him go about or lie at his door, an action will lie against him at the suit of a person who is bit, though it happened by such person's treading on the dog's toes; for it was owing to his not hanging the dog on the first notice. And the safety of the king's subjects ought not afterwards to be endangered."

See, also, *Humphrey v. Morgan,* 30 Okla. 343, 120 Pac. 577.

It appears from the verdict of the jury that the defendant in error only recovered $100 damages and for his necessary traveling expenses and for medical attendance. Under the evidence there can be no doubt that the plaintiff in error had knowledge of the vicious character of the dog, and under the law he was liable for the injury sustained by the complainant. The evidence is sufficient to sustain the verdict on account of keeping a vicious dog alone, even if the other elements of damages were eliminated from the case entirely.

We, therefore, recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.