## SLAGLE v. AMOS.

No. 15375—Opinion Filed June 30, 1925.

**1. Trial—Demurrer to Evidence—Failure of Evidence.**

Where there is no evidence introduced to sustain the allegations of a petition, it is the duty of the court to sustain a demurrer, timely interposed, to the evidence of the plaintiff.

**2. Trial—Erroneous Instruction on Weight of Evidence.**

The determination of questions of fact is wholly the province of the jury, and where there is an issue as to the existence of certain facts and evidence affirming and denying their existence, it is error for the court to instruct the jury that the evidence tends to prove such facts.

**3. Same—Prejudicial Error.**

A division of function between court and jury is essential to the safe administration of justice, and a new trial will always be granted where the judge interferes with lawful province of the jury, to the prejudice of the party complaining.

(Syllabus by Ruth, C.) ·

Commissioners' Opinion, Division No. 3.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by J. R. Amos against Guy Slagle. Judgment for plaintiff in the sum of $750, and defendant appeals. Reversed and remanded.

Guy L. Andrews, for plaintiff in error.

George M. Porter and John L. Fuller, for defendant in error.

Opinion by RUTH, C. The parties hereto will be designated as they appeared in the trial court. Plaintiff's petition alleges that during the year 1920, he became indebted to defendant in the sum of $441.75, and executed his promissory note for part of same: that on January 31, 1920, plaintiff executed his mortgage on certain live stock and farming implements, to secure the indebtedness owing to defendant. That prior to executing and delivering the mortgage to defendant, plaintiff executed and delivered his promissory note in the sum of $320, to the Bank of Crowder, and secured the payment of the note by chattel mortgage to the said bank, covering the same and identical property thereafter mortgaged to defendant. It is then alleged defendant purchased the note and mortgage held by the bank, and thereby plaintiff became indebted to defendant in the sum of $761.75. Plaintiff further alleges he turned over to defendant $1,002.50,

as the proceeds of cotton sales, and after deducting $253.12, due defendant for his share of the crop, and $160 advanced by defendant for payment of cotton pickers, there remained $589.38, to apply on plaintiff's indebtedness, leaving plaintiff indebted to defendant in the sum of $172.37, and thereafter defendant attempted to foreclose the mortgages held by him in his possession, and sold the same, but failed to give legal notice of the sale, and attempted to "queer" the sale by inducing parties not to bid at the sale, and defendant did not sell "one bay mare of the value of $100, one gray horse of the value of $50, one gray mare of the value of $25, and 3,000 pounds of cotton seed of the value of $75, but converted the same to his, defendant's, use." That the reasonable value of the property taken by defendant was $1,133, and after deducting $172.37 due defendant, there is due plaintiff $960.63, for which he prays judgment.

For his second cause of action, plaintiff alleges that about November 1, 1920, he entered into an agreement with defendant, whereby defendant was to furnish money to pay for picking the cotton remaining in the field, and defendant was to sell same; that plaintiff picked 14,522 pounds of lint cotton, and defendant sold same for approximately $2,541.35, and after deducting $635.-33, the amount due as a ¼ crop rent, and $918.65, advanced by defendant for the picking of the cotton, there remained due the plaintiff $987.37. Plaintiff prays judgment on his second cause of action for $960.63. This is the identical sum prayed for in the first cause of action, and as there is no general prayer, we cannot say from the record whether the plaintiff is praying judgment in the sum of $960.63, or $1,921.26, but in view of the record and our conclusions, this is not material at this time.

Defendant for answer alleges the plaintiff executed a chattel mortgage, wherein there was a "warranty" that there was a prior mortgage on the same in the sum of $195, due the Bank of Crowder, when in truth and in fact there was due the said bank, by virtue of the mortgage, $427.50. That plaintiff owed defendant $794.56, evidenced by one note for $397.75, dated January 31, 1920; one note for $314.81, dated June 21, 1920; two notes of $30 each, dated April 19, 1920; two notes of $11 each, dated July 12, 1920, and plaintiff further owed defendant $6.16 for cotton seed; $17.73 ginning charges, and $44.52 for stock feed furnished by defendant to plaintiff, making a total of $932.49, due defendant, plus interest on the notes from the date thereof.

Defendant denies plaintiff paid him $1,-002.50, but alleges the total amount received from the sale of the cotton was $473.54, and the Bank of Crowder required this sum to be deposited with the bank by reason of the priority of its mortgage. Defendant denies he ever purchased the note and mortgage of the bank, or ever attempted to foreclose the same or foreclose his own mortgage; that the notices of sale were posted by the bank and the sale conducted by the bank; that defendant did not attempt to prevent parties bidding at such sale, but encouraged bidding even to the extent of offering to loan prospective bidders sufficient money to purchase the articles offered for sale, and further alleges the plaintiff left from 700 to 800 pounds of wet and rotten cotton seed on the premises when plaintiff deserted the farm, and the cotton seed could not be salvaged. That on November 27, 1920, plaintiff abandoned the cotton, and plaintiff and defendant had a full settlement on said date respecting the cotton, and afterwards he paid plaintiff and his family for gathering the lint cotton, approximately 821 pounds, and defendant had to plow the remainder under as he could not get plaintiff to pick it.

For his cross-petition defendant alleges there is due him from plaintiff on notes and interest $850.40, on open account $137.93. That plaintiff is entitled to a credit of $602.33, leaving a balance due defendant of $386, for which defendant prays judgment against plaintiff. The defendant's answer and cross-petition were verified, and plaintiff did not file a reply to defendant's answer, nor answer defendant's cross-petition. The case was tried to a jury, and a verdict returned for plaintiff in the sum of $750, and defendant appeals.

Defendant urges several assignments of error, but it is necessary only to consider the errors urged to the instructions of the court, duly excepted to by defendant.

The court gave instruction No. 6, as follows:

"No. 6. You are further instructed that the plaintiff having turned over the chattels included in said mortgage to the defendant for the purpose of foreclosure, that the defendant had a right to proceed to foreclose the same.

"No. 1. The plaintiff contends that the Bank of Crowder sold its notes to the defendant Slagle and that the foreclosure sale was the foreclosure of the defendant, not of the Bank of Crowder.

"No. 2. You are instructed that the evidence in this case shows that the foreclosure was either by the defendant, himself, or by said defendant and the Bank of Crowder, jointly, and it is immaterial as to which it was, as his duties and liabilities would be the same in either case.

"No. 3. While the defendant had a right either to purchase the bank notes and foreclose himself, or to join with the bank in a joint foreclosure, yet in either case, it was his duty to conduct the foreclosure sale fairly and honestly and to use his best efforts to see that the property brought its fair market value.

"No. 4. It was his duty under the mortgage in controversy to see that notices of such sale were posted at five public places in Pittsburg county, Okla., at least ten days before such sale.

"No. 5. If such sale was conducted honestly and fairly and upon the notices provided by law, then the plaintiff was entitled to credit on his notes to the Bank of Crowder, and in case there was any surplus upon the notes of the defendant only for the amount said property brought at such sale, regardless of its actual market value.

"On the other hand, if said sale was not conducted fairly and honestly and upon the notices posted as required by law, or if the defendant did anything to queer the sale or cause the property to not bring what it otherwise would have brought at such sale, then plaintiff is entitled to credit on his indebtedness for the fair market value of his property at the time of such sale, regardless of the price it brought at the sale."

We have paragraphed and numbered the paragraphs in instruction No. 6, for the sake of brevity. Paragraph No. 3 was clearly an invasion of the province of the jury, even had there been any evidence introduced on the part of the plaintiff that the defendant foreclosed the mortgage himself or jointly with the bank. Plaintiff did not introduce or attempt to introduce any evidence to prove the defendant purchased the note and mortgage held by the bank, or that defendant posted or caused notices of the sale to be posted, or conducted the sale.

On the part of the defendant, the president of the Bank of Crowder testified defendant had never purchased the note held by the bank and never had any interest in the note. The only notice of sale introduced in evidence was the notice posted by the bank, through its employe Ralph Lillard, and recited the property therein described would be sold as the property of J. R. Amos (this plaintiff) to satisfy the debt owed the Bank of Crowder. That the president of the bank, a Mr. Hendon, "clerked the sale," and the constable, Edwards, "cried the sale", and was paid for his services by the bank, and Ralph Lillard, an em-

ploye of the bank, posted notices in six or seven different places in the county.

Plaintiff's first cause of action was predicated wholly upon the theory that defendant had purchased the note and mortgage given to the Bank of Crowder by plaintiff, and defendant had foreclosed the same, and the plaintiff not having offered any evidence in support of the allegations in his first cause of action, the demurrer of the defendant to the evidence should have been sustained, but the same was overruled, and the defendant was required to introduce evidence to disprove allegations in the petition upon which testimony had never been offered. At the conclusion of all the evidence, defendant requested the court to instruct the jury to return a verdict for defendant on the first cause of action, which motion was by the court overruled, and the court proceeded to instruct the jury that "the evidence in this case shows that the foreclosure was either by the defendant himself or by said defendant and the Bank of Crowder jointly, and it is immaterial as to which it was, as his (defendant's) duties and liabilities would be the same in either case."

In view of the other instructions given by the court, this was equivalent to instructing the jury to return a verdict for plaintiff, and certainly invaded the province of the jury on the only material fact in issue, and was so highly prejudicial to the rights of the defendant as to constitute reversible error.

It is a firmly established principle of law that:

"A division of function between court and jury is essential to the safe administration of justice and a new trial will always be granted, where the judge interferes with the lawful province of the jury to the prejudice of the party complaining.

"Where there is an issue as to the existence of certain facts and evidence affirming and denying their existence, it is error for the court to instruct the jury that the evidence tends to prove such facts." St. Louis & S. F. R. Co. v. Wilson, 32 Okla. 752, 124 Pac. 326.

The court cites with approval, Heithecker v. Fitzhugh (Kan.) 20 Pac. 465, wherein it was said:

"In trials by jury, courts ought to be very careful not to impose an opinion as to the facts in dispute, for it is well recognized that juries have great respect for the opinions of the trial courts, and, where such opinions are clearly expressed, a jury rarely, if ever, returns a verdict in opposition to such expressed opinions."

This court further cites with approval Davis v. Gerber, 69 Mich. 246, 37 N. W. 281, wherein it was said:

"The court may always tell the jury, when he shall deem it proper or necessary, for what purpose certain testimony was received, but it is not proper for the court to say to them, after the evidence is in, what that testimony tends to show or prove unqualifiedly, and without submitting to them in the same connection, the question of its credibility."

"Whether the testimony does or does not tend to prove any particular fact depends entirely upon whether the jury believes the testimony, and its credibility is for the jury always and not for the court." See, also, Littlefield Loan & Investment Co. v. Wakeley & Chambers, 65 Okla. 246, 166 Pac. 90; Tubbs v. Shears, 55 Okla. 616, 155 Pac. 549; Goodwin v. Greenwood, 16 Okla. 498; Chi., R. I. & P. Ry. Co. v. Stibbs, 17 Okla. 104; Humphrey v. Morgan, 30 Okla. 343, 120 Pac. 577.

For error of the court in giving the instruction complained of, the judgment of the trial court should be reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1547. (2) 38 Cyc. pp. 1512, 1646. (3) 4 C. J. p. 1038, §3019.