TIDAL OIL CO. v. FORCUM et al.

No. 28390. May 13, 1941.

Rehearing Denied July 8, 1941.

Application for Leave to File Second
Petition for Rehearing Denied
Sept. 9, 1941.

*116 P. 2d 572.*

Y. P. Broome and T. W. Francis, both
of Tulsa, for plaintiff in error.

W. V. Pryor, Rockwood & Rockwood,
and Speakman & Speakman, all of Sa-
pulpa, for defendants in error.

DAVISON, J. This is an action for
damages arising from the wrongful
death of plaintiff's husband, alleged to
have been caused by a dog bite terminat-
ing in hydrophobia. There was a verdict
and judgment for the plaintiff in the
trial court, from which the Tidal Oil
Company, joint defendant with O. M.
Stevens, has perfected this appeal.

The petition alleged that Stevens was
the district superintendent in charge of
the Tidal Oil Company's Corbray farm
and other leases belonging to the de-
fendant; that all operations on the said
lease were under the immediate con-
trol of Stevens, as agent and superin-
tendent of the oil company; that O. M.
Stevens and the Tidal Oil Company
carelessly, negligently, and wrongfully
kept and harbored on the premises over
which Stevens had control, a police dog,
known by them to be vicious; that Stev-
ens while acting as such agent and su-
perintendent ordered John Dee Forcum,
an employee of the company, to kill the
dog, and in carrying out Stevens' orders,
Forcum was bitten by the dog, and as a
proximate result of the wound, Forcum
became inoculated with hydrophobia
and died.

In support of the above allegations
the evidence establishes the facts here-
inafter narrated. O. M. Stevens was the
district superintendent of the defendant
company. He had charge of the com-
pany's general operations over a wide
area near Kiefer, Okla. The defendant
company provided Stevens with a house,
as well as an office to which the em-
ployees of the company would come for
work. Both establishments were within
the same enclosed fence and about 15
feet apart. Stevens kept the police dog
within this fenced enclosure and no en-
try could be made to the office except
by entering the fenced area. Some eight
months before Forcum was bitten,
Stevens was present when the dog
lunged at a person applying for work,
and at that time Stevens remarked that
the dog "was getting bad." Other wit-
nesses testified that the dog was vicious.
On the day of the injury Forcum was
engaged in hauling gasoline to a gaso-
line station located some 30 feet west
of Stevens' house. He was bitten a few
minutes after 4 p. m., while apparently
getting the dog from under the house,
although there is a conflict in the evi-
dence on this point. Forcum took the
antirabies treatment within a few days
after the injury, but his condition grew

steadily worse. Witnesses testified that he became highly nervous; that he had spasms, and frothed at the mouth. This condition was followed by paralysis and death. The two doctors in attendance testified that in their opinion hydrophobia was the cause of the death.

The circumstances surrounding the injury are conjectural. A witness testified that Stevens said he had told Forcum to kill the dog. The trial court instructed the jury not to consider Stevens' statement "as against the Tidal Oil Company." The defendant company sought to introduce testimony by Mrs. Stevens which would have been to the effect that Forcum had quit work for the day and that he had remarked to her immediately preceding the injury that he did not think there was any necessity for keeping the dog under the house and that he intended to get him out. The trial court sustained an objection to the introduction of this evidence. No further evidence was admitted or sought to be introduced relative to Forcum's action at the time he was bitten.

The assignments of error urged in the defendant's behalf may be summarized in the following propositions:

(1) The verdict and judgment of the trial court are not sustained by, and are contrary to, the evidence.

(2) The defendant corporation was not a keeper or harborer of the dog and had no knowledge of its vicious nature.

(3) The trial court erred in refusing to admit the testimony of Mrs. Stevens.

(4) The trial court erred in permitting the introduction of excerpts from a medical treatise.

Although the evidence is conflicting as to whether the dog was vicious and whether it was known to be such, these are questions of fact for the jury, and after examining the evidence presented, we cannot say same is insufficient to sustain the verdict rendered. See Harris et ux. v. Williams, 160 Okla. 103, 15 P. 2d 580. The question of what was the proximate cause of the injury is generally for the jury. Luick v. Sondrol, 200 Iowa, 728, 205 N. W. 331. If the keeper of a known vicious dog permits it to live, he is liable for injuries inflicted by it when suddenly becoming rabid, although he had no time to kill or confine it after learning of its condition before the injuries were inflicted. Clinkenbeard v. Reinert, 284 Mo. 569, 225 S. W. 667, 13 A. L. R. 485. We think the plaintiff presented sufficient evidence to justify the jury in finding that Stevens kept the dog with knowledge of its viciousness and that Forcum's death proximately resulted from the dog's bite.

The second of defendant's propositions, hereinbefore set forth, which concerns the sufficiency of the proof as to whether defendant was the keeper or harborer of the dog and knew of its vicious character, appears to have been presented to the trial court as ground for instructing the jury to return a verdict for the defendant, which the court refused to do. Defendant's motion for such a verdict raised the following questions: Was the act of Stevens in keeping and maintaining the dog the act of the corporation? and was Stevens' knowledge of the dog's viciousness imputable to the corporation?

Under the common law, which governs the instant action, the gist of the action for injury by a dog known by its owner or keeper to be vicious is generally said to be, not negligence in the manner of keeping the dog, but the keeping of it. The action is founded upon the maintenance of a nuisance (Ayers v. Macoughtry, 29 Okla. 399, 117 P. 1088, 37 L. R. A. [N. S.] 865; cited in Tubbs v. Shears, 55 Okla. 610, 155 P. 549; 3 C. J. S. 1256, 2 Am. Jur. 731) and whether the keeper owned the dog is immaterial (Harris v. Williams, supra). That corporations may be liable as keepers and harborers of vicious dogs is well established. 2 Am. Jur. 741; 3 C. J. S. 1267.

The defendant denies that it was the dog's keeper, first, on the ground that the dog was kept at the private residence of Stevens furnished to him by the company as a part of his compensation. As we view the evidence, however, this argument is untenable. The residence cannot be said to be strictly private. As hereinbefore related, it was within the same fenced enclosure as the office and could be considered as a part of the same premises. The office is described as being maintained by Stevens for his personal convenience. It is not denied that the district superintendent had authority to establish such an office, but the character of the particular office is said to be private rather than corporate. The evidence shows that employees reported to this office for orders; that applicants applied there for work; and that a desk and company stationery furnished Stevens by the defendant were kept therein. In view of this evidence we must conclude that the premises on which Forcum was injured were maintained as a part of the operations of the defendant company. No other satisfactory explanation may be made of its existence and use.

The defendant next contends that, although the dog was kept at its office, no authority was given Stevens to keep the dog and no company regulation required him to keep it. Concerning a similar argument, the Louisiana Supreme Court, in Serio v. American Brewery Co., 141 La. 290, 74 So. 998, said:

"It is hardly to have been expected that defendant's entire corporate authority would have been invoked, or even that a resolution of its board of directors would have been considered necessary to authorize the keeping of a dog in its bottling plant whether to kill rats, or as a mascot, or source of amusement to the employees. . . ."

The liability of the principal is not limited to whether the agent was authorized to do, or omit to do, the particular act, or whether the act was done or omitted in violation of the principal's instructions; the determinative question is whether the act was done or omitted by the agent in the course of his employment and while he was engaged in the business of his principal. Vol. 2, Mechem on Agency (2d Ed.) p. 1458. Stevens had control over the premises. He was the defendant's agent in charge of its district office. The fact that he mismanaged the property by keeping a vicious dog thereon does not take the act beyond the scope of his employment. Moore v. Atchison, T. & S. F. Ry. Co., 26 Okla. 682, 110 P. 1059. If the keeping and harboring of a dog at the company's district office by the agent in charge of that office does not constitute a keeping and harboring by the corporation, it is doubtful if a corporation might, under any circumstances, be the harborer of a dog.

Defendant further relies on the argument that even though Stevens' act in keeping the dog was the act of the corporation, no liability attaches to the defendant corporation unless it had knowledge of the dog's vicious propensities. See 3 C. J. S. 1256. Since no higher official of the company was shown to have had knowledge of the dog's viciousness, the question is raised as to whether Stevens' knowledge of the dog's vicious nature is imputable to the defendant. The general rule is stated in Fletcher's Cyclopedia of Corporations, vol. 3, pg. 18, as follows:

"Notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal. . . ."

The best test of imputation of knowledge is not whether the agent, whose knowledge is sought to be attributed to the corporation, is president, treasurer, etc., but whether the condition and facts known were within the sphere of the authority of the particular agent. Under this rule, Fletcher states at page 56 et seq., that knowledge of a foreman in charge, shipping clerk, claim agent, station agent, conductor of train, engineer, clerk, etc., has been imputed to their corporate principals.

One of the leading cases on the point is Keenan v. Gutta-Percha Mfg. Co. (N. Y.) 46 Hun, 544, 24 N. E. 1096. The facts in that case are sufficiently analogous to the present one to render the following language of the court therein both interesting and pertinent herein:

"The proof that the dog was harbored by the defendant is uncontradicted and beyond doubt. She was upon the premises of the defendant with a litter of pups at the time of the laceration, and the plaintiff, who was in the employ of the defendant, was feeding her or preparing her food, and the bookkeeper of the defendant furnished money to buy food for the animal twice a day.

"The question of actual ownership is quite immaterial. Whoever keeps such an animal is liable for the mischief it perpetrates. The basis of the action is the wrongful keeping of the dog with knowledge of its vicious disposition. (Addison on Torts, 261.) Notice to the foreman of the defendant was notice to the corporation, and the contention to the contrary is hardly entitled to serious consideration. Corporations can be charged with negligence in no way other than by showing some carelessness or omission of its agents. The wrong or negligence in this case consisted in keeping the animal after she bit the first boy, and that was with the knowledge of the foreman and the bookkeeper, that is, the bookkeeper knew the dog was kept on the premises of the defendant. . . ."

In view of the foregoing considerations, we conclude that since Stevens was defendant's district superintendent, and had charge of the office and premises on which it was located, his knowledge of the vicious nature of the dog was the knowledge of the corporation.

Our attention is next directed to defendant's claim that the trial court erred in excluding proffered testimony by Mrs. Stevens, wife of the district superintendent. The defendant company offered to prove by Mrs. Stevens that the deceased was not on company business in that, at the time the injury occurred, he had quit work for the day. It was urged that this evidence should

have been admitted on the ground that it constituted a separate defense of the corporation, the theory being that plaintiff sought to hold defendant liable for failure to furnish a safe place to work. The question of the competency of the evidence on the "safe place to work" theory need not be decided, for plaintiff's action is predicated on the theory that one who keeps and harbors a dog which he knows to be vicious is liable for injuries which it may inflict. See Tubbs v. Shears, supra. Under this theory the only material part of the proffered testimony was the alleged statement by Forcum to Mrs. Stevens that he intended to get the dog out from under the house. Had this been accompanied by evidence showing Forcum knew the vicious propensities of the dog, the groundwork for a defense of contributory negligence would have been laid. The rule concerning contributory negligence as a defense in such an action is stated in 1 R. C. L. at page 1122, as follows:

"As negligence, in the ordinary sense, is not the ground of liability in an action for injuries occasioned by a ferocious dog, so contributory negligence, in its ordinary meaning, is not a defense. Therefore these terms, when employed in this class of actions, may be deemed to be used, not in a strictly legal sense, but for convenience. Thus slight negligence, or the want of ordinary care, as the unintentional treading on the toes of a vicious dog, will not relieve its owner from injuries thereby occasioned; and even where warnings to beware of the dog are posted about the owner's premises, it seems that he will not be exempted from liability to one who is rightfully there, or to one who is unable to read. . . ."

After quoting the above excerpt with approval, this court, in Tubbs v. Shears, quoted from Ayers v. Macoughtry, supra, as follows:

"It is the keeping of the animal, with knowledge, either actual or constructive, of its dangerous or vicious propensities, which creates the liability. . . . Nor is it necessary that the dog's disposition or peculiarity be such as to render it liable to or inclined to bite all with whom it

comes in contact; it being held in a number of cases that, if the dog had bitten one person prior to the injuries sued for, knowledge thereof is sufficient notice of his character to bind the owner. . . . In the old case of Smith v. Pelah (2 Str. 1264), supra, which has never been departed from, Lee, C. J., ruled that if a dog has once bit a man, and the owner having notice thereof keeps the dog, and lets him go about or lie at his door, an action will lie against him at the suit of a person who is bit, though it happened by such person's treading on the dog's toes; for it was owing to his not hanging the dog on the first notice. And the safety of the king's subjects ought not afterwards to be endangered."

The discussion already quoted from 1 R. C. L. 1122, continues:

". . . But if a person, with full knowledge of the evil propensities of a dog, wantonly excites him, or voluntarily and unnecessarily puts himself in the way of such an animal, he will be adjudged to have brought the injury on himself, and so ought not to be entitled to recover. The correct rule of liability therefore seems to be that the owner cannot be relieved from it by any act of the person injured, unless it be one from which it can be affirmed that he caused the injury himself, with a full knowledge of its probable consequences. . . ."

Since there was no evidence in the case tending to show that Forcum had knowledge of the dog's vicious nature and since Mrs. Stevens' statement would not have charged him with such knowledge, we conclude that the evidence would not have established a defense of contributory negligence, and was, therefore, immaterial. It is well settled that the exclusion of immaterial evidence constitutes no ground for reversal. National Bank of Commerce v. Fish, 67 Okla. 102, 169 P. 1105, L. R. A. 1918F, 278; Hazlett v. Wilkin, 42 Okla. 20, 140 P. 410.

Evidence was also submitted by the defendant tending to show that the cause of deceased's death was tuberculosis rather than hydrophobia. Dr. Mote, who did not attend the deceased at the time of his last illness, was called by the defendant. In addition to giving testimony that in his opinion an examination which he made of Forcum some five months before his death disclosed that he then had tuberculosis in an advanced stage, the doctor testified that "Landry's paralysis" did not occur in hydrophobia. On cross-examination Dr. Mote was asked if he considered an author by the name of Tice a good authority, and his answer was in the affirmative. Then counsel read from a medical treatise by Tice an excerpt which might be construed as contradicting the position taken by Dr. Mote in his statement as to Landry's paralysis never occurring in hydrophobia. Later, the excerpt was introduced as evidence over the objection of the defendant company, which now maintains that the admission of excerpts from the treatise was prejudicial. Our statute provides that unless "the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right," the judgment shall not be set aside or a new trial granted. Section 3206, O. S. 1931, 22 Okla. St. Ann. § 1068. The two doctors who attended Forcum during his fatal illness testified that in their opinion hydrophobia was the cause of deceased's death. Lay witnesses testified to actions of Forcum during his illness which were indicative of the presence of hydrophobia. We cannot believe that in the face of this testimony the admission of the excerpts from Tice's medical treatise tending to contradict the testimony above referred to given by Dr. Mote in answer to a hypothetical question of a technical type "probably resulted in a miscarriage of justice." While the facts are not analogous, the reasoning in Clinton & O. W. Ry. Co. v. Dunlap, 75 Okla. 64, 181 P. 312, tends to sustain this conclusion.

As we have found no prejudicial error in the record, the judgment of the trial court is affirmed.

WELCH, C. J., and RILEY, HURST, and ARNOLD, JJ., concur. CORN, V. C. J., and OSBORN, BAYLESS, and GIBSON, JJ., dissent.